### Hoskins v. Morgan

(Decided February 16, 1923.)

#### Appeal from Leslie Circuit Court

Boundaries—Establishment—Parol Agreement Between Owners—Acquiescence—Adverse Possession.—Where there is a bona fide dispute between adjoining owners as to their dividing line, a parol agreement, establishing the line, and executed by marking or building a fence on the line, and thereafter acquiesced in by the parties for a considerable time, is valid, though not acquiesced in or accompanied by adverse possession for the fifteen year statutory

period of limitation. But, unless there is a bona fide dispute as to the location of the line furnishing a consideration for the agreement, it will not be enforced, though if possession is taken under it and maintianed for the statutory period, the line will be upheld because acquired by adverse possession.

CLEON K CALVERT for appellant.

LEWIS & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee and plaintiff below, Hughes Morgan, filed this action in the Leslie circuit court against appellant and defendant below, E. L. Hoskins, seeking to recover of the latter a judgment for $86.00, the alleged value of 43 timber trees that defendant cut from a tract of land described in the petition and which plaintiff alleged he owned and possessed, and plaintiff also sought the quieting of his title and a perpetual order enjoining defendant from committing future trespasses. The answer denied plaintiff's title and asserted title in defendant. The issues were transferred to the ordinary docket for a jury trial and under an instruction submitting them the jury returned a verdict in favor of plaintiff upon which judgment was entered, and the court declined to set it aside on defendant's motion for a new trial and he has appealed.

Defendant claims under a patent for 300 acres issued to Elisha Morgan on August 3, 1847, while plaintiff claims under a patent issued to Dillion Asher for 2,500 acres of January 13th, 1848. The Asher patent laps upon and includes within its boundary by far the greater part of the Morgan patent, and being junior to the latter it, to the extent of the lap, is void under an unbroken line of opinions of this court. That rule is conceded by counsel for plaintiff, but he seeks to establish title in his client under an alleged conditional line separating the Morgan from the Asher patent, which it is alleged was agreed to by the then owners about forty years ago, and that they and their successors in title recognized the conditional line since that time. There is not now, nor was there at the time of the alleged agreement, nor has there ever been any disagreement or dispute as to the true location of the boundaries of the two patents. One Thomas Hoskins owned the portion of land now claimed by plaintiff, at the time of the alleged establishment of the conditional

line, while the heirs of Elisha Morgan owned the land covered by his patent, and one of his heirs testified that he and his brothers were at some time in the past (the date not being given) engaged in an effort to locate the lines of their father's patent and they met Thomas Hoskins on the top of the ridge separating the waters of Lower Bad creek from those of the right fork of John's creek, and that it was then and there agreed that the ridge should thereafter be the line between their adjoining lands. At that time there was no dispute, as we have already stated, as to the location of the line. The Morgans on the occasion testified to were simply engaged in trying to find it. Plaintiff's portion of the Asher patent lies west of the ridge referred to while the greater portion of the Morgan patent covered by the Asher patent lies east of the ridge and it is that portion of the latter patent lying west of the ridge that is in dispute and from which the timber was cut, resulting in this litigation.

The evidence showed that there were no marked trees along the line of the ridge, but they were found along the west line of the Morgan patent extending across and west of the ridge. It is shown by plaintiff's witness, who testified to the agreement establishing the line, that at that time the Morgans surrendered to Thomas Hoskins all of the land in their patent lying west of the ridge while Hoskins neither claimed nor surrendered any of the land to them lying east of the ridge, nor did he or any of his successors in title take possession of any of the surrendered land west of the ridge, nor was there any marking of the alleged conditional line.

Notwithstanding the facts as related, plaintiff claims the right to maintain the action under the doctrine announced in the cases of Grisby v. Combs, 14 Ky. L. R. 651; Ferguson v. Crick, 15 Ky. L. R. 461; Duff v. Cornett, 23 Ky. L. R. 297; Frazer v. Mineral Development Co., 27 Ky. L. R. 815; Cheatham v. Hicks, 28 Ky. L. R. 66; Caudill v. Bayes, idem 182; Jamison v. Petit, 6 Bush 669; Hughes Lumber Co. v. Valentine, 32 Ky. L. R. 646; Amburgy v. Burt and Brabb Lumber Co., 121 Ky. 580; Warden v. Addington, 131 Ky. 296; Mosley v. Eversole, 148 Ky. 685; Garvin v. Threlkeld, 173 Ky. 262, and Keen v. Osborne, 185 Ky. 647.

That doctrine, as stated in the Threlkeld case, is "that where the dividing line is uncertain and there is a *bona fide* dispute as to its location and the parties agree

on the dividing line and execute the agreement by marking the line or building a fence thereon, such an agreement is not prohibited by the statute of frauds, nor is it within the meaning of the provisions of the law that regulate the manner of conveying real estate. The reason for the rule is that the parties do not undertake to acquire and to pass the title to real estate, as must be done by written contract or conveyance. They simply by agreement fix and determine the situation and location of the thing that they already own, the purpose being simply by something agreed on to identify their several holdings and to make certain that which they regarded as uncertain.'' In every case cited and relied on by plaintiff's counsel the essentials to the application of the doctrine, as contained in the excerpt from the Threlkeld case, are stated and emphasized. Indeed, it is the existence of them which relieves the agreement from the operation of the statute of frauds and without them the agreement would be unenforcible, unless possession was taken under it and adversely held for a period of fifteen years, since such adverse possession is not necessary where the facts underlying the rule are present, as is fully shown in the Threlkeld case.

All of the cases hold that, not only a parol agreement locating a division line, but likewise a written agreement to the same effect must, like other contracts, be supported by a sufficient consideration, which in the cases referred to was stated to be the mutual concessions of the parties and the settlement of a *bona fide* dispute followed by the marking of the agreed line and taking possession of it. Hence, in the Amburgy case the court, in stating some of the prerequisities to the enforcement of the agreement, said: ''There was no mutual concession. There was no marking of a distinct line, or otherwise establishing it so that it could be visible; its monuments giving notice to the world that a recorded written instrument between the parties would give. On the contrary, it amounts merely to one man's having a ceded title to land by agreement without consideration, ceding it to another man who happens to own an adjoining tract; the cession being by parol agreement alone. This transaction, we think, falls clearly within, and is subject to all the evils and vices aimed to be prevented by, our statute of frauds and perjuries, requiring a contract conveying title to land to be in writing and signed by the party to be charged. It would never do to say, and it has never been

said authoritatively, that, merely because one man owns land adjoining another's, he may acquire the latter's land, or some part of it, by parol agreement, any more than if he did not own land adjoining." Additional excerpts from the other cases relied on are unnecessary since there is no departure in any of them from the doctrine as stated in the inserted quotations.

The writing introduced by the same chief witness upon which plaintiff relies adds no strength to his case, even if its terms were definite and clear as to their meaning and there was no controversy about its due execution, though neither of which is correct. In fact we find nothing in that writing whereby the Morgans agreed to surrender, convey or otherwise part with the title to any of the land within their patent lying east of the ridge referred to and on the waters of Lower Bad creek. Furthermore, the due execution of that writing is not proven, since those purporting to execute it did so by making their marks only and it was neither witnessed nor acknowledged, and in the language of the trial court we may truly say, "This writing is signed by all parties by mark according to the certified copy produced; and there are no witnesses. It does not refer to any land except land on John's creek (east of the ridge, while the land in controversy lies west of it), nor to any divisional line and therefore throws no light on this case."

Defendant moved the court at the close of plaintiff's testimony to direct a verdict in his favor, which was overruled with exceptions, and the motion was renewed at the close of all the testimony with like result. We think the court was clearly in error in overruling that motion and upon another trial it should be given if the evidence is substantially the same.

Wherefore, the judgment is reversed with directions to set it aside, and for proceedings consistent herewith.