## Holliday, et al. v. Tennis Coal Company, et al.

(Decided May 25, 1926.)

### Appeal from Perry Circuit Court.

1. Appeal and Error—On Appeal Special Demurrer, not Called to Attention of Trial Court, will be Treated as Waived.—Where defendant filed answer without first calling attention of court to special demurrer, and obtaining ruling thereon, demurrer will be treated as waived, and cannot be relied on for first time on appeal.

2. Appeal and Error—Parties—Incapacity of Plaintiff to Sue, Not Appearing on Face of Petition, Must be Raised by Answer and Cannot be Raised for First Time on Appeal (Civil Code of Practice, Secs. 92, 118).—Where dissolution of corporate plaintiff did

not appear on face of petition so as to be available by special demurrer, under Civil Code of Practice, sec. 92, objection to its capacity to sue must be raised by answer, in view of section 118, and cannot be raised for first time on appeal.

3. Appeal and Error—Finding of chancellor, based on evidence so conflicting as to leave mind in doubt as to whether he erred, will not be disturbed.

4. Champerty and Maintenance—Grantor Under Champertous Deed Must Abandon or Rescind Contract Before Maintaining Action for Possession of Land.—Though grantee takes nothing by champertous deed, and title remains in grantor, latter must first abandon or rescind contract before maintaining action for possession of land.

5. Champerty and Maintenance—Reconveyance to carry out rescission of champertous deed is valid for that purpose, though made while land is held adversely.

6. Boundaries—Parol Agreement, Fixing Uncertain Boundary which is in Dispute, is Binding, on Marking Line, and Acquiescence Therein by Parties for Considerable Time.—Where dividing line between two tracts is uncertain, and there is bona fide dispute as to its location, parol agreement, fixing line, is binding after execution by marking or building fences, and after recognition and acquiescence by parties for considerable length of time.

7. Boundaries—Evidence Held Insufficient to Show that Parol Agreement, Claimed to Fix Boundary, was Made and Recognized for Sufficient Time to Become Binding.—Evidence held insufficient to show that parol agreement to fix disputed boundary line was made and acquiesced in by parties for considerable length of time, so as to become binding on adjoining landowners.

WOOTTON, SMITH & WOOTON and NAPIER & HELM for appellants.

JOHN D. CARROLL and P. T. WHEELER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Tennis Coal Company brought this action on April 27, 1921, against McCager Holliday, Martha Holliday and Tolbert Holliday to quiet its title to a 273 acre tract of land in Perry county. On final hearing judgment was rendered in favor of plaintiff and the defendants have appealed.

The prefatory part of the petition is as follows:

"The plaintiffs say that the Tennis Coal Company is a corporation duly organized and existing under and by virtue of the laws of the State of Kentucky, and that as such it is authorized to sue and be sued in its corporate name aforesaid; that J. W. M.

Stewart of Ashland, Ky., is its duly authorized agent in the state of Kentucky, with an office in Ashland, Boyd county, Ky., and he is the party upon whom process may be served.

"Plaintiffs say that the plaintiff Elkhorn Coal Corporation is a corporation created and existing under and by virtue of the laws of the State of Virginia, that as such it is authorized to sue and be sued, in its corporate name aforesaid, that as such corporation it is authorized to do business in the state of Kentucky, and ———————— is its duly authorized agent upon whom process may be served, with an office at Fleming, Letcher county, Kentucky, and the said agent can be found thereat.

"Plaintiffs say that the Kentucky River Coal Corporation is a corporation created and existing under and by virtue of the laws of the state of Virginia, and as such is authorized to sue and be sued, to contract and be contracted with in its corporate name aforesaid; that it is duly authorized to do business in the state of Kentucky; that its chief office is in the Fayette National Bank Bldg. Lexington, Kentucky, and that W. O. Davis is its duly authorized agent thereat upon whom process can be served and who can be found thereat for that purpose.

"Plaintiffs state that the plaintiff, Tennis Coal Company, is the owner of and entitled to the immediate possession of the hereinafter described tract of land, and that these plaintiffs Elkhorn Coal Corporation and Kentucky River Coal Corporation are interested therein, and are the only stockholders in and to the plaintiff Tennis Coal Company, and for that reason are interested parties plaintiffs in and to this action, and make themselves parties plaintiffs hereto."

On October 6, 1921, appellants filed a general demurrer and special demurrer "for defect of parties," which were never acted on by the court, and also an answer, which, in addition to denying other allegations of the petition and pleading title in themselves to a tract of 300 acres which conflicted with that claimed by plaintiff, contains the following allegations:

"The defendants, McCager Holliday, Martha Holliday and Tolbert Holliday, for answer and de-

fense to plaintiff's petition herein, deny that the Elkhorn Coal Corporation is a corporation incorporated under the laws of the state of Virginia, or that as such is authorized to do business in the state of Kentucky; deny that the plaintiff Tennis Coal Company is the owner of, or is entitled to the immediate possession of the tract of land set out and described in the petition herein or any part thereof; deny that the Elkhorn Coal Corporation, or Kentucky River Coal Corporation, are interested in same, or that they or either of them are the only stockholders in and to plaintiff, Tennis Coal Company; deny that the plaintiff, Tennis Coal Company, is now the owner or entitled to the immediate possession under its alleged chain of title to the tract of land described in the petition herein, etc."

The affirmative allegations of the answer were denied by a reply, and on September 12, 1922, appellants filed an amended answer "to conform" to the proof pleading champerty and also the establishment of an agreed or conditional line by the former owners of the two tracts.

It is first insisted that the special demurrer should have been sustained. The basis of this contention is that the Elkhorn Coal Corporation and the Kentucky River Coal Corporation, who were mere stockholders in the Tennis Coal Company, were not proper parties. The record discloses that the special demurrer was not called to the attention of the court. On the contrary, appellants filed an answer without saving the question. Evidence was then heard, the case was tried on its merits and final judgment was rendered without requesting the court to act on the special demurrer. In view of these circumstances, the special demurrer will be treated as waived, and can not be relied on for the first time in this court. D. L. & N. T. Road Company v. Stewart, 2 Metcalfe 119.

The next contention is that the Tennis Coal Company was dissolved before the institution of the action, and was not therefore entitled to maintain the action or to recover a judgment. In support of this contention we are cited to certified copies of certain papers in the office of the secretary of state showing that the Tennis Coal Company was dissolved on February 8, 1917. Under our Code the legal capacity of the plaintiff to sue must be raised by special demurrer if the incapacity appears on

the face of the petition, otherwise by answer. Civil Code, sections 92 and 118. The fact that plaintiff had been dissolved did not appear on the face of the petition, and could not therefore be raised by special demurrer. While the original answer denied that either the Elkhorn Coal Corporation or the Kentucky River Coal Corporation was a corporation, a similar allegation in the petition that the Tennis Coal Company was a corporation was not denied. Not only so, but the certified copies of the dissolution papers were not only not accompanied by any pleading, but none was ever filed, alleging that the Tennis Coal Company had been dissolved. In other words, the case is one where the objection that the Tennis Coal Company had been dissolved and did not have the legal capacity to sue was not raised by answer, and under the express provisions of the Code, and the uniform decisions of this court, the failure to do so is a waiver of the objection, and the question can not be raised for the first time in this court. Puckett v. Jameson, Sheriff, 157 Ky. 172, 162 S. W. 801; Gillen v. I. C. R. Co., 137 Ky. 375, 125 S. W. 1047; Justice v. Phillips, 3 Bush 200; Hall v. Cumberland Pipe Line Co., 193 Ky. 728, 237 S. W. 405.

With respect to the title the record discloses the following situation: Appellee acquired title in 1903 from Colson Duff, to whom a patent for 1,000 acres dated July 1, 1850, was issued, based on a survey made September 14, 1849. Appellants claim title under the William Guinn survey of 400 acres dated August 15, 1849, the William Guinn survey of 100 acres, dated April 23, 1855, the William Guinn survey of 300 acres, dated April 14, 1856, the Morris Caldwell survey of 300 acres, dated May 15, 1852, and the James Guinn survey of 275 acres, dated July 13, 1855. It is true that the William Guinn survey of August 15, 1849, is superior to the Colson Duff survey of September 14, 1849, but the evidence discloses that the land in controversy lies within the Colson Duff survey and entirely outside of the William Guinn survey of that date. Doubtless, it lies within the other surveys under which appellants claim, but, as these surveys were subsequent, and therefore inferior, to the Colson Duff patent, it results that the title of the record is in appellee and not in appellants. That being true, the case turns on whether appellants have met the burden of showing title by adverse possession, or the establishment of an agreed line, or of sustaining their plea of champerty.

As the junior surveys were void to the extent of their conflict with the Colson Duff patent, the only way that appellants as inferior title holders could acquire title by adverse possession to the land in dispute as against appellee, the superior title holder, was to enter outside of the William Guinn survey of August 15, 1849, and within the interference, and hold same or a portion of same adversely under a claim to a well defined or plainly marked boundary for the statutory period of 15 years. Bates v. Wright 201 Ky. 430, 257 S. W. 45. We have read and reread with great care the evidence bearing on the question. While there was proof that some trees along the ridge, to which it is alleged appellants claimed, were marked and painted the evidence justifies the conclusion that the painting and some of the markings were done within less than 15 years prior to the bringing of the action, and that the old markings were on corner trees too few in number and too far apart to constitute a plainly marked boundary. It is true that there are several clearings within the interference, but to say the least the evidence as to when they were made is so conflicting as to leave the mind in doubt, and, not being able to say that the chancellor erred in holding that they were made within less than 15 years before the suit was brought, his finding will not be disturbed. Jones v. Tarry, 187 Ky. 700, 220 S. W. 523.

As the evidence failed to show that appellants were then in the adverse possession of any portion of the land in controversy, it results that the deeds from Colson Duff to appellee, dated September 1, 1903, and the deeds from Colson Duff to A. G. Duff, dated June 7, 1902, and from A. G. Duff to Colson Duff, dated December 17, 1902, were not champertous. However, the plea of champerty raises another question. It appears that on September 14, 1916, in consideration of a certain number of shares of the preferred and common stock in the Kentucky River Coal Corporation, the Tennis Coal Company conveyed to that company the land in controversy. On ascertaining that the land or a portion thereof was held adversely by appellants when the conveyance of September 14, 1916, was executed, the agreement was rescinded by a written contract and the land was reconveyed to the Tennis Coal Company by the Kentucky River Coal Corporation by deed dated March 28, 1921. While it is the law of this state that the grantee takes nothing under a champertous deed, and the title remains in the grantor, it is also the

law that the grantor must first abandon or rescind the champertous contract before he can maintain an action for the possession of the land. Crowley v. Vaughan, 11 Bush 517; Harmon v. Brewster, 7 Bush 355; Luen v. Wilson, 85 Ky. 503, 3 S. W. 911; Hobson v. Hendrick, 7 Ky. Law Rep. 362; Doyle v. Cornett, 187 Ky. 586, 219 S. W. 1059. Here the contract was rescinded and the land was reconveyed by the Kentucky River Coal Corporation to the Tennis Coal Company before the action was brought, and, as the law permits the parties to rescind, a reconveyance to carry out the contract of rescission, though made while the land is adversely held by another, must be regarded as valid for that purpose.

Finally it is insisted that a division line was established along the ridge between Holly Bush fork of Ten Mile and Grape Vine creek. It is the law that where the dividing line between the two tracts of land is uncertain, and there is a *bona fide* dispute as to its location, a parol agreement fixing the line is binding on the adjoining land owners after it is executed by marking or building a fence on the line and is recognized and acquiesced in by the parties for a considerable length of time. Wallace, et al., v. Lackey, 199 Ky. 190, 250 S. W. 843. But, as pointed out in Hoskins v. Morgan, 197 Ky. 736, 248 S. W. 210, the agreement must always be supported by sufficient consideration, such as mutual concessions by the parties to the *bona fide* dispute. There is evidence that the Guinns stated that a conditional line had been established along the ridge. There is also evidence by one John L. Napier that in the year 1873 or 1874, or 48 or 49 years before he testified, he, when a boy 14 years of age, was present on the ridge with Colson Duff, Sam Grigsby and others when the dividing line was established, and he, at the direction of Colson Duff, piled some rocks at the beginning of the line while others hacked some trees. After this witness testified some witnesses for appellee went to the place where it is claimed the rocks were piled, and were unable to find any rocks. Afterwards Napier and others went to the same place and claimed to have found the rocks there. Then other witnesses for appellee went to the same place and found a pile of rocks which on examination and comparison they ascertained had been removed from nearby places. In view of the unsatisfactory character of this evidence, and of statements alleged to have been made by Colson Duff that no conditional line had

been established, and of the fact that the parties to the alleged agreement thereafter made conveyances which disregarded the conditional line, and that appellants did not object to a survey of the land in dispute at the time of the purchase by appellee in 1903, but did object when the survey was made in 1922, and of the further fact that there was no difficulty in locating any of the surveys, and no occasion for any dispute as to the dividing line, we are constrained to agree with the chancellor that the evidence falls short of showing that the alleged conditional line was ever established and acquiesced in by the adjoining landowners.

Judgment affirmed.