## Steele et al. v. University of Kentucky.

June 25, 1943.

Bullitt & Middleton, Hubert T. Willis and Grannis Bach for appellants.

J. W. Jones and A. H. Patton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellee filed its declaratory judgment suit against appellants Steele, Trustee of the Estate of Herbert Howe, deceased, the latter's heirs, and the Bryant Stave Company, holding a contract with the trustee for cutting and removing timber from two small tracts of land, one situated wholly in Breathitt County, the other partly in that and Perry County. It alleged ownership, use and possession, and that Steele was claiming the disputed tracts as a part of the Howe estate; that the timper company under its contract was about to cut and remove timber. The relief sought was a quieting of its title, and injunctive order.

The tracts involved were included in a deed covering a large acreage made up of various tracts of mountain land, conveyed to the University by a deed of trust of the Robinson Mountain Fund, on October 10, 1923. The conditions of the trust in part were that the Uni-

versity should use the land for agricultural experiment work, reforestation, and teaching soil fertility. The trust, according to the proof and pleadings, is being carried out. The issue here is raised by joint answer of trustee and the timber company, admitting that trustee is claiming title and has contracted with the stave company for removal of the timber from the two tracts, but denying appellee's ownership.

In the petition it was alleged that defendants were claiming title to the land under a parol boundary agreement between Henry Hudson and William Combs, and under deeds and patents to Hudson, Steele's predecessors in title. It was alleged that no such agreement existed. This was categorically denied, as was the allegation that the tracts in question were embraced in the conveyance to the University, or its predecessors in title. The answer does not undertake to set up defendants' source of title, so the only issue is whether or not, by reason of the alleged agreement between Combs and Hudson, the title is in the Trustee. It was stipulated by parties that: (1) The two tracts of land described in petition were granted to Wm. M. Combs by two patents issued on November 12, 1867, upon surveys of January 24, 1860. The stipulation is further to the effect that mesne conveyances purport to convey the two tracts along with a large acreage to University, which tracts are particularly described in a deed from Mowbray and Robinson to Robinson Foundation in 1922.

There were further stipulations to the effect: (1) Combs, on September 15, 1890, conveyed to Crate, Taylor and others a tract of land located on Laurel Fork of Buckhorn Creek, containing 1,583 acres; that "said boundary of land borders on the top of the ridge between Williams Fork of Long Fork and said Laurel Fork, and that the deed calls for the ridge as one of the boundary lines of said tract." (2) Jones et al. by deed of December 5, 1898, conveyed their interests to F. W. Taylor and James Crate, and Crate and Trustees under the will of Taylor conveyed the tract with other lands to Taylor and Crate Corporation. (3) Taylor and Crate, on November 14, 1912, conveyed a large acreage, including the 1583 acres and with other lands the two tracts in controversy to Mowbray and Robinson, who conveyed to Foundation Fund, and it to the University as above stated.

It was further stipulated that Wm. Combs "owned and claimed said tract of 1583 acres, located on Laurel Fork for fifteen years before he conveyed to Taylor," and that University "now holds and claims the described land by virtue of this and the above mentioned deeds."

At this point it may be noted that there is no claim by pleading by either party of actual adverse possession, and proof in this respect falls short if it had been made. The University stands on its admitted record title. Appellants do not have complete record title, and stand on the proposition that a boundary agreement made long years ago, established their title, and as demonstrating its claim refer to certain deeds which it is claimed lead to the boundary line title.

The first is a deed executed October 14, 1903, by James Hargis and wife, G. T. Strong, J. M. Wooton, and Eliza Hudson, widow of Henry Hudson, to Herbert Howe, which conveyed 723 acres, situated on the Williams Fork of Long Fork of Buckhorn. The tract was comprised of a Hargis tract of 411 acres; Wooton tract 31 acres; Hudson tract of 203 acres, and a Combs' tract of 78 acres. The source of title is not mentioned, nor are we able to learn from the long description by metes and bounds whether the two tracts in question are, though they may be, included.

It may be noted that while a Combs' 78-acre tract is conveyed, Combs is not named as a party nor did he sign. In this deed Hargis did not warrant generally title to any part of the land, but specially as to all. Later in 1907, Hargis, Strong and T. H. Hudson conveyed to Howe the minerals underlying surface conveyed by the foregoing deed. Hargis again did not warrant title, his joining as in the former deed apparently having been for the purpose of quitclaiming.

The latter deed conveys 644½ acres, a difference of 78 acres; this may account for the Combs' tract mentioned in the first deed. For the first and only time there develops the claim upon which title of grantors appears. It is recited that the "mineral and property herein is the same land descended to T. H. Hudson and his brothers and sisters, from his father by reason of the laws of descent, and being the same property that was adjudged to him by the U. S. Dist. Court, in equity case No. 2419, styled Hudson v. Richards;" we do not find any such

case noted in the reports. This recital brings us down to claim of title by virtue of conditional line agreement, said to have been made between Wm. Combs and Henry Hudson, under whose alleged ownership the grantors (except perhaps Hargis) undertook to convey to Howe.

It is insisted by appellants that this conditional agreement, under our decisions, throws the title to the Howe estate. Appellee does not dispute the principle of law to the effect that owners of adjacent lands may settle a bona fide dispute as to boundary, either in writing or by an oral agreement based on sufficient consideration, mutual concessions, followed by marking and agreeing to the line and taking possession. Hoskins v. Morgan, 197 Ky. 736, 248 S. W. 210; Moran v. Choate, 253 Ky. 470, 69 S. W. (2d) 994; Williams v. Waddle, 285 Ky. 416, 148 S. W. (2d) 298.

We gather the historical facts to be that one Jackie Campbell, who soldiered in the War of 1812, when mustered out came to Kentucky, and with his family settled near the mouth of Williams Fork on the Long Fork of Buckhorn Creek in Breathitt County. By reference to the map filed this was some distance north of Rattlesnake Fork, which is nearer the boundaries of the southerly tracts in dispute. Campbell had several daughters; one married Henry Hudson who established himself on Long Fork some time in 1840. It is said that Campbell and Hudson acquired patents for large and substantial boundaries of wild lands up and down the water shed of Long Fork, most of which lay on that water shed, but some extending over surrounding ridges on other sheds. At this point it may be said that the ridge, which it is claimed was established as a line, is a ridge dividing two water sheds. It runs in an irregular north and south course, through the lands which seem to have been acquired by the Mowbray and Robinson Company, the University's predecessor in title. The two Combs' patents, each about 50 acres, lie on the east side of the ridge. Combs also owned land on the west side of the ridge, as shown on the maps.

It is gathered from proof that Hudson was claiming to own the lands on the east side of the ridge, though there are neither deeds nor patents brought into evidence. The claim of appellants is to the effect that Hudson, claiming land on the east side of the ridge, learned that Combs had "laid down" some patents on that side,

and raised some complaint, this according to proof the basis of the alleged conditional line, upon which proof was presented to the chancellor, and which we are compelled to recite somewhat in detail.

A. A. Allen, aged 84, testified that he had lived at the mouth of Buckhorn for 82 years. He knew and lived near Henry Hudson until his death. He knew Wm. Combs, and Hudson who first lived at the mouth of Long Fork, but later moved southwardly to Troublesome. He said Hudson "always claimed the Long Fork and Williams Fork (east side of the ridge) lands, and that Combs claimed the land on Laurel Fork for as long back as I can recollect." Some time in 1880 Allen was in debt to Combs, who had levied on execution on his land. He, with some neighbors (one being Henry Hudson), met Combs at the county seat, Allen's purpose being to make part payment on the debt and get Combs to agree to raise the levy. Combs agreed, and Hudson said, "When are you coming to settle ourn?" And Combs answered, "I will be up in a few days and we will settle it and make the ridge the line between us," and adds that the ridge they were discussing was the ridge between Laurel and Long Forks of Buckhorn. This witness said he had no knowledge of the agreement having been carried out. Allen, insofar as ownership or proprietary rights were concerned, said Hudson "always claimed on Long Fork, there might have been a little piece in the main head of the left hand fork. Uncle Bill claimed on one side and Henry Hudson on the other. It looks like Combs claimed land on the Long Fork, and on the Laurel Fork. I understood that Hudson had patents that lapped on the Laurel Fork, and Combs on the Long Fork; that was my understanding about it." This evidence as to proprietary interest is corroborated in a like manner.

Dickie Benton Combs, 85 years of age, knew both Combs and Hudson. He said Hudson lived on Long Fork near the mouth of Williams Fork, and claimed "quite a portion of land on Williams Fork. I don't know whether he really owned it or not, but he claimed it." He had heard that Combs had some patents on Williams Fork, and that Hudson had some patents "that went over on Laurel Fork"; that there was some dispute or conversation between Hudson and Combs about the land on the Laurel Fork side, "this was about 60 or 65 years ago." This seems to have been mostly by way of

information imparted by Gabe Hudson, a son of Henry Hudson. We quote him:

"Gabe Hudson lived right down here across from Williams Fork. He said 'Pa and uncle Bill has got a little conversation, a little dispute about land. Pa has got patents running on over to the Laurel Fork onto uncle Bill's land. Uncle Bill claims some on this side, and they agreed on the ridge to be a conditional line between uncle Bill and uncle Henry.' That is what they told him; I don't know, that was my understanding."

He then says that he, his father and Ben Adams "sure marked a line up the ridge."

Dickie Collins, who was said to be a son of Ben Adams, relates what his father had told him about the marking of the ridge line, but does not, nor could he in the nature of the situation, say that the line marked by them was at the instance of Hudson and Combs. Appellants in brief have quoted to some length the testimony of Dickie Benton Combs, which we have given above in substance. However, they failed to quote the following questions and answers by the same witness. He was asked, "Who had you to mark the line?" Ans. "It was Gabe Hudson, to the best of my recollection. He was the oldest boy." Then after detailing how he and others had marked the line, said that he had heard Combs claim land on the Williams Fork, and Hudson on the other fork before and after the marking. The witness frankly said that he had never talked to either Hudson or Combs "about this conditional line. I don't know nothing about the agreement." He further said that he did not know whether or not the line was known "in the neighborhood."

Other witnesses, descendants of Hudson, testify that Combs and Hudson had talked about the ridge being the dividing line, although some say there was no dispute or controversy. T. H. Hudson says it was made known "to my father that W. M. Combs had some patents cut across, and they saw each other and agreed for the ridge."

It appears from the map on file, which is not disputed except as to one portion of a short line, that at the northern end of the ridge, some distance from the disputed lands, Combs had two patents, and Hudson one,

which was junior. These in one instance overlapped the ridge, and each other, and one of Combs' patents overlapped the ridge.

It is not difficult to gather, in view of the fact that the lower patents are not sufficiently identified, that if there was dispute it related to the patents not embracing the land in dispute. Hudson said that after the marking his father "exercised ownership of this land on Williams Fork." On cross-examination witness admits that he did not hear the agreement, but only heard of it "years ago," and admits that the question of ownership of the patents overlapping the ridge was what "brought it about." Other witnesses seem to make this point clear.

Beyond the testimony of T. H. Hudson there is nothing to show that the parties, after the alleged marking, recognized the ridge line, and it may be readily gathered that if there was actual dispute or controversy, it related to overlapping patents which did not embrace the two tracts in controversy. There is a total lack of evidence that those who marked the line ever made report of their marking, which as done was at the sole direction of the older son of Henry Hudson. In the absence of clearer proof that there was a bona fide dispute as to the ownership of the tracts involved, or as to agreement of the disputing parties, if there was dispute as to these, or a clearer recognition by taking possession, we think the appellants' claim must fail.

Accepting, as applicable law, each and every case cited by appellants, we find the dominant principles to be that there must exist ownership or proprietary interest in the lands in dispute; that there is a bona fide controversy as to boundary line between the properties in controversy; that there must be an agreement between the parties to the controversy, and that possession must be taken in accord with the agreement, and acquiescence for a reasonable or considerable time. The proof does not measure up to requirements, at least in particulars detailed above.

Judgment affirmed.