## Howard v. Howard et al.

(Decided Feb. 1, 1938.)

N. R. PATTERSON for appellant.

GOLDEN & LAY and JAMES H. JEFFRIES for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Claiming ownership of a tract of land lying in Bell county, and containing about 50 acres, Louie Howard brought this action against Elisha Howard and Jacob Howard and their wives to enjoin trespass. The special judge held that the defendants were the owners of the land, and denied the relief sought. Louie Howard appeals.

The undisputed facts are: In the year 1844, Larkin Howard obtained a patent to a 250-acre tract of land lying in Bell county, and some distance from the Cumberland river. In the year 1854 his wife, Elizabeth Howard, acquired a patent to a 100-acre tract of land

lying southeast of the Larkin Howard patent and near the Cumberland river. Between the two tracts there was a large area of vacant and unappropriated land. In the year 1880, John J. Howard, son of Larkin and Elizabeth Howard, acquired title to both the Larkin. Howard and Elizabeth Howard patents. In the year 1884, John J. Howard and his brother, Green A. Howard, each acquired a patent for 200 acres of land lying between the Larkin Howard and Elizabeth Howard patents. The patents to the two brothers were granted on the same day, and appellant claims through John J. Howard, and appellees through Green A. Howard.

In the year 1889, John J. Howard and his wife executed a deed conveying to Green A. Howard the following:

"All of our undivided interest in the estate of Larkin Howard, Dec'd. and his wife Elizabeth Howard, Dec'd. lying on the North side of Cumberland. River and on the south side of Pine Mountain and lying South West and below the following described conditional line which has been previously made and partly marked out on the ground by the said parties, to-wit:

"Beginning at a beech, maple and chestnut standing on the North bank of said river at the mouth of the Big Spring Branch; thence running up and with the meanders of said Branch to a large beech standing on the West bank of same; thence leaving said Spring Branch and running with a marked line about 40 poles to a marked spruce pine, same course continued to the S. E. line of a 250 acre survey patented to the said Larkin Howard, Dec'd; thence passing through the said 250 acre survey so as to make to the said party of the second part one third of the said 250 acre survey or at least one third of the value of said survey which part shall be on the lower end or south west of said survey."

In addition to the undisputed facts, we have evidence that the agreed line was recognized by the parties for a great many years.

After the alleged dividing line leaves the Elizabeth. Howard patent, it runs for a considerable distance

across the Green A. Howard patent of 1884, and along what is known in the record as the "Potato Hill Rock Ridge," until it reaches the old Larkin Howard patent. The land in controversy lies between the ridge and the common line of the John J. Howard and Green A. Howard patent of 1884. The deed does not purport to establish a divisional line, but refers merely to a line that had been "previously made and partly marked out on the ground by the said parties." All that it purports to convey is the undivided interest of the grantors "in the estate of Larkin Howard, deceased, and his wife, Elizabeth Howard, deceased, lying southwest and below the conditional line." As neither Larkin Howard nor Elizabeth Howard owned any portion of the Green A. Howard patent of 1884, and the purpose of the deed was to convey, it should not be construed as affecting land not embraced by its terms, or as depriving the grantee of land which he already owned. We are therefore constrained to the view that the deed itself did not have the effect of establishing a divisional line, and that its acceptance by the grantee did not estop him from claiming beyond the line referred to in the deed.

But the point is made that, in addition to the deed, there is evidence that the agreed line ran along the ridge, and that the ridge was always recognized by the parties as the divisional line. Sometimes certain elements affecting the validity of divisional lines are not involved, and are omitted from general statements of the law on the subject, but the whole question was carefully considered and accurately treated in the case of Amburgy v. Burt & Brabb Lumber Co., 121 Ky. 580, 89 S. W. 680, 28 Ky. Law Rep. 551, where the court announced the following rules concerning boundary line agreements:

(1) Where the true dividing line between two tracts of land is in doubt, and there is a dispute between the adjoining owners as to the exact location of the line, which depends upon variable facts or circumstances not susceptible of certain determination, a parol agreement between the adjoining owners establishing a line as the true dividing line is not an exchange of lands, and is not within the statute of frauds.

(2) Where adjoining owners have established a di-

viding line by parol agreement, and have executed the agreement by taking actual possessison of the parts allotted to them, respectively, up to the agreed line, and have for a long time recognized that line as the true dividing line, there is an estoppel to claim otherwise, and the agreement is not within the statute of frauds, although in establishing the line each has given up some part of his land to the other.

(3) Where two tracts of land owned by adjoining owners interfere, the boundary called for by the title papers of one overlapping that of the other, there being a dispute and controversy as to the superiority of the titles, and consequently as to the true dividing line, an agreement between the owners to establish a dividing line between them in pursuance of which such line is established and plainly marked, and thereafter recognized by both parties for a considerable time as the true line, is not within the statute of frauds, and will be upheld.

(4) Where there is no dispute between adjoining landowners as to the true location of the dividing line between their tracts, and there is no doubt as to the superiority of the title of one of the owners where it conflicts with that of the other, a parol agreement between the respective owners establishing a new boundary line in such a position that one is given more land than he previously had, there being no marking or establishment of a distinct line, and no consideration for the cession of the land by one owner to the other, is within the provision of the statute of frauds requiring contracts conveying land to be in writing and signed by the party to be charged.

It is at once apparent that the case before us does not fall within any of the classes of valid parol agreements concerning divisional lines. The uncontradicted evidence shows that the dividing line between the John J. Howard patent of 1884 and the Green A. Howard patent of the same date is a common line, and in the very nature of things its location was fixed and certain, and did not depend upon variable facts or evidences in themselves not susceptible of certain determination. In the next place there was no overlapping of patents nor any doubt as to the superiority of title, but Green A. Howard owned all the land between the alleged dividing

line and the common line of the two patents, and, in so far as the land in controversy is involved, John J. Howard gave up nothing and Green A. Howard surrendered the entire tract. And while it may be true that the alleged line was marked so far as it ran over the lands covered by the Larkin Howard and Elizabeth Howard patents, the evidence does not justify the conclusion that it was marked as it ran along with Potato Hill Rock Ridge and over the lands of Green A. Howard.

On the whole, we are constrained to concur in the conclusion reached by the special judge.

Judgment affirmed.