**Albert SLUSHER et al.**

**v.**

**D. M. BINGHAM'S HEIRS,**
**Howard Bingham, et al.**

Court of Appeals of Kentucky.

June 11, 1954.

As Modified on Denial of Rehearing
Nov. 19, 1954.

Robert R. Boone, Pineville, for appellants.

Robert Watson, Middlesboro, for appellee.

STANLEY, Commissioner.

Title to about 10 acres of rough land is involved. It is wedge shaped with the point at "a deer lick" near the mouth of Little Creek, a tributary of Red Bird River. The appellants, Albert Slusher, et al., claim the dividing line runs from that point N 21 E 33.69 chains to a stump near a large rock at a point opposite Macroe Hollow. The appellees, the heirs of D. M. Bingham, claim the line runs from that point N 38.30 E to the "head of Wolf Hollow" on the same mountaintop or ridge. The common source of title is the will of Wilkerson Asher, an ancestor of all the parties. He devised his home farm to his widow for life with the remainder over to his named heirs, with the description "beginning at the mouth of *little creek*, thence running up the *little creek* to the *dear* lick, thence running *squair* across the top of the spur at the head of Wolf *hollower* to R. W. Asher's line, thence with R. W. Asher's line to the top of the mountain towards W. R. Knuckles, thence back to the Beginning."

The "head of Wolf hollow" is clearly identifiable as a monument. Other provisions in the will seem to affect this description and the appellants say the ambiguity was settled long ago by the parties owning the respective tracts agreeing the line as claimed by them to be the correct one. There are some marked trees along that line, but who marked them or when is left obscure. The line claimed by the appellees is also marked, although perhaps not as continuously. However, the surveyor, J. M. Culton, who was very familiar with the situation by reason of a long acquaintance and experience in surveying these and adjoining properties, as well as doing so for the purpose of this litigation, testified that the line claimed by the appellees is the correct and proper one. The evidence does not support the assertion of an "agreed line" as defined in Amburgy

v. Burt & Brabb Lumber Co., 121 Ky. 580, 89 S.W. 680, 28 Ky.Law Rep. 551, and Howard v. Howard, 271 Ky. 773, 113 S.W. 2d 434. There is a difference in recognition of a line, which is but the basis of a claim for adverse possession. Combs v. Combs, Ky., 240 S.W.2d 558. The evidence respecting this contention is contradictory to say the least. We have considered the record (which is quite extensive for so little value), studied the briefs, and heard extended oral explanations and arguments of the attorneys. We are not convinced that the decision of the chancellor is erroneous and, therefore, follow that decision.

The apex of the triangle or point of the wedge on or near Little Creek is designated in the record as "the deer lick." It is referred to as such in several deeds. Webster defines the term as "a place to which deer resort" and gives one of the definitions of "lick" as "a place where salt is found on the surface of the earth to which wild animals resort to lick it up; also a salt spring." At that place is a sulphur spring which, it is said, was opened up by digging out the hillside long after the execution of Wilkerson Asher's will. The judge went upon the ground (which is a procedure very helpful to the trial court and conducive to fairness and exactness but obviously is meaningless to this court) and spotted the point of beginning and identified it by making an "X" on a rock.

Whether the present spring was intended originally as a pinpoint start is doubtful, for in the old days precision in these matters was not attempted. However, the deed which the appellees' predecessor in title, D. M. Bingham, received from N. T. Arnett and others in May, 1936, calls for the beginning point as "a deer lick spring." This may be regarded as clearing up the doubtful location of the starting point. We believe then that the chancellor should have accepted this as the beginning of the line. We cannot tell from the record where the rock which the chancellor marked with an "X" as a starting point is located with reference to the spring. In the oral argument, one of the attorneys for the appellants stat-

ed he understood it to be 60 feet away. If it is that far, then we have involved in this particular part of the controversy a wedge of land 60 feet at the base and extending in converging lines to a point nearly a half mile away. The property is of trivial value. We apply the rule of not reversing a judgment to correct such a minor error. The judgment may be made definite by declaring the point to be at the spring, and as thus corrected it will stand affirmed.

Judgment affirmed.