## Martin v. Hampton Groçery Co.

(Decided Oct. 12, 1934.)

S. S. WILLIS, HILL & HOBSON and B. M. JAMES for appellant.

COMBS & COMBS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant, plaintiff below, brought this suit against the appellee to recover the possession of a described tract of land which he claimed to own, and upon which he alleged the appellee had erected a building which it was occupying. He also sought compensation for the use of this ground during the time the appellee had occupied it with its building. In the course of the litigation, the appellant, taking his cue from the opinion of this court in the case of Casteel v. Pennington, 228 Ky. 206, 14 S. W. (2d) 753, receded from his position that he was entitled to the possession of the disputed ground, and in lieu thereof asserted that he was entitled, in addition to compensation for the use of the

ground during the time of its occupancy by the building, to the fair and reasonable market value of the ground in question. The appellee's defense was a denial that it was using with its building any land of the appellant other than that which he had conveyed to it, coupled with a claim of estoppel and a plea of laches. On final hearing, the court dismissed the petition of the plaintiff, now appellant, and he has appealed.

The trial court filed a written opinion which succinctly states the evidence as disclosed by the testimony in this record. We quote from the opinion:

"On the 6th day of August, 1920, for a consideration of $4,000.00 the plaintiff, T. A. Martin, sold and conveyed to the defendant the following lot:

"A lot or parcel of land at Beaver Creek in Floyd County, Kentucky, lying between the Chesapeake & Ohio Railway Company's right of way and the Big Sandy River slightly west of the middle of the parcel of land belonging to the first party approximately 1500 feet long and more particularly described as follows:

"Beginning at a stone set in the northerly side of the Chesapeake and Ohio Railway Company's right of way; thence up the river with the Chesapeake and Ohio right of way 70 feet; thence at right angles to said right of way 120 feet to a stake; thence at right angles down the river 70 feet; thence at right angles 120 feet to the point of beginning.

"The foregoing described real estate was carved out of a certain boundary that the grantor had purchased on January 15, 1919, for a consideration of $5,000.00 from Thomas J. Allen and wife.

"At the time of the conveyance to the defendant the tract of land had been subdivided into the lots and stakes driven. If a map had been made at that time the map is not in evidence or in the record. It has developed that some four or five surveys have been made. On May 6, 1924, a survey was made by O. J. Conley, civil engineer, who also made a map which is introduced and filed as evidence in this case. This map shows lots, numbered, streets and the right of way of the Chesapeake &

Ohio Railway Company. It further shows the location of the lot conveyed to defendant. This plat is also filed in the County Court Clerk's office of this county. It will be observed from this map that 25th Street borders on the west of the lot sold to defendant. It further shows lot 100 feet fronting on the east and a lot about 80 or 85 feet on the north and the right of way of the Chesapeake & Ohio on the south. This survey and map is four years after the deed was executed conveying the lot to defendant, and the plaintiff says that this map was made to correspond with the Hampton Grocery is the main reason we [sic] made the map.

"Another survey was made by Townsel Combs, civil engineer, on September 3, 1928, which shows a lot supposed to be conveyed to defendant, the Collins Hotel, the center line of the Chesapeake and Ohio Railway Company and the northerly line of said right of way. This map does not show any streets or lots except the two above mentioned. This survey and plat was made as the court gathers in contemplation of bringing this suit.

"Immediately after the purchase of the lot by defendant it began and constructed a large brick business house. It is the contention of plaintiff herein that the defendant in building said building did not build it upon the lot as actually conveyed by him to it. He says that there is an encroachment upon his land, but does not know the extent. He gives no facts in evidence to back his statement. True he refers to the map or plat made more than eight years after the conveyance. The plaintiff also says that before the lot was sold to defendant that actual survey had been made and divided into lots and the lots numbered and staked. If the boundary was divided into lots, the survey must have been made by Civil Engineer Conley.

"Plaintiff also claims that stakes were driven which marked the boundary of the different lots. It further appears in evidence that prior to the actual location of the lot in question that the plaintiff and representatives of the defendant went upon the ground and stepped off the distance and adjusted temporarily stakes to suit the idea of plaintiff and that afterwards substantial stakes were driven.

"It further appears in proof that at the time the foundation upon which the building was constructed was laid, that corner stakes had been placed and tacks driven therein to show the exact boundary line of the lot; that the foundation was in accordance with these lines.

"The question that presents itself and at issue herein is the location of the lot sold by plaintiff to defendant. The lot was 70 feet front by a depth of 120 feet. The defendant has utilized this space of ground in its business and the construction of its building. The contention of plaintiff is that the lot as used by defendant is not at right angles to the right of way of the railway company and not being at right angles that if right angle lines were drawn so as to include the building as constructed that it would take a frontage of 82½ feet to a depth of 129 feet. There is no evidence in the record that the company has used any ground except the ground that is covered by its building and including the space of 70 feet by 120 feet.

"The map of Conley shows that a public street abuts this property on the west. It also shows that the property on the east is leased. It is shown in the evidence that this property is being used by a supply company, having been rented by plaintiff. * * *

"The deed mentions a set stone in the right of way of the Chesapeake & Ohio Railway Company. This stone was never set. The right of way of the railroad company is also used as a base line and the other lines are run according to the deed at right angles. If the plat by Conley is correct the location of plaintiff's property is parallel with the right of way of the railroad company. It, however, appears in proof that at the instance of plaintiff the building was not set at right angles, but the porch was made wider on one end than on the other for the purpose of giving better approach to an intersecting street. It is in the evidence that this was done at the request of plaintiff. Added force is given to this statement by the plat of Conley and also by the opening and the using of 25th Street abutting on defendant's property."

The evidence abundantly supports the conclusion

of the trial court that, while there is no ambiguity in the deed to the defendant, the parties actually located the lot in controversy on the ground now occupied by defendant's building, and that large sums of money were spent by the defendant upon the lot thus located by agreement and acquiescence. Streets were opened by the plaintiff and have been in constant use since the purchase of the land in controversy. The filing of the map in the county clerk's office by the plaintiff was an effectual dedication of the streets thereon marked so far as the plaintiff herein is concerned, and is not now subject to revocation by him. Having pointed out the lot and stakes having been driven by the parties at the time of the making of the contract, and the location of the lot having been acquiesced in for eight long years, and the defendant having spent a large sum of money in the erection of the building upon the lot thus staked out, the plaintiff knowing that this money would be so expended at the time he assisted in laying out the lot, he cannot now be heard to complain that the building is built on ground not actually conveyed. We are clearly of the opinion that the plaintiff is estopped to question the location of the appellee's lot.

The lower court did not err in dismissing the petition, and its judgment is affirmed.