## Blackburn v. Piney Oil & Gas Co. et al.

April 21, 1939.

G. R. BLACKBURN for appellant.

A. B. COMBS and HARMAN, FRANCIS & HOBSON for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming in part and reversing in part.

In this opinion the appellant, John Blackburn, the plaintiff below, will be referred to as the plaintiff, and the appellees, Laurence Tierney Land Company and the Piney Oil and Gas Company, defendants below, will be referred to as the defendants, Land Company and Oil Company.

By a deed dated June 29, 1889, Thomas Blackburn and wife conveyed to Arthur Bright, trustee, all minerals "in, upon, and under my farm," situated in Pike County, Kentucky, containing 65¾ acres in consideration of $65.75 paid in cash upon delivery of the deed. Immediately following the description of the land in the deed in which the minerals were conveyed this appears:

> "All houses, yards, wells, orchards, gardens, barns and barn yards and grave yards, etc. is excepted out of the contract for use and benefit of the party of the first part."

The sentence just quoted is an exception and not a reservation, since a reservation creates in the grantor a new right issuing out of the thing granted—something which did not exist before the grant—while an exception withholds some part of the grant which would otherwise have passed to the grantee. 8 R. C. L. 1089, Section 147; 18 C. J. 340, Section 339. To express it another way, an exception keeps the deed from passing the thing excepted, while a reservation reserves something new out of the thing granted. Cox v. Colossal Cavern Company, 210 Ky. 612, 276 S. W. 540. As the grantor was using the curtilage without interference and desired to continue to do so, he did not reserve something new when he conveyed the minerals, but excepted from the conveyance his right to the uninterrupted use of the curtilage.

This deed gave the grantee the option to purchase any part of the surface at any time within 30 years after the date of the deed at the rate of $20 per acre. By mesne conveyances the Land Company became the owner of these minerals which it leased to the Oil Company for development, and the plaintiff, John Blackburn, became the owner of some 15 acres of the surface of this 65¾ acre tract.

On November 21, 1931, the Oil Company moved a drilling rig on that part of this farm owned by the plaintiff and selected a site for the drilling of a gas well 8 or 10 feet from the creek on a small strip of bottom land. This drilling site was about 250 feet from plaintiff's dwelling house and as it later developed, was on the garden excepted in the mineral deed of 1889 from drilling operations. The well was completed December 13, 1931, at a cost of $7200 and proved to be a very good commercial well. The testimony is conflicting as to whether representatives of the defendants Land Company and Oil Company conferred with plaintiff and obtained his permission to move the drilling rig on his garden at the time the drilling site was located, or whether the permission was obtained from plaintiff's son. But it is immaterial whether it was the plaintiff or his son with whom defendants' representatives conferred and obtained permission to move the rig on this location, because the plaintiff knew the rig was on this spot and that a gas well was being drilled. While at home nights from his work he often visited the scene of operations and made no objection to the well being drilled on that location. On March 28, 1933, some 15 months after the well was completed, plaintiff notified the defendant Oil Company the well was drilled in his garden, and that under the exception contained in the mineral deed of 1889 no well could be drilled in this garden, and the minerals thereunder were excepted from the conveyance and were the property of the plaintiff.

The defendants, Land Company and Oil Company, refused to recognize plaintiff's claim to the well, and he instituted this equitable action claiming title to the well and all minerals under the garden by virtue of the exception quoted at the outset of this opinion. The defendants pleaded this exception in the mineral deed of 1889 did not except the minerals under the curtilage but related only to the surface and prevented the owner of

the minerals from removing them through the excepted area. The defendants also pleaded the plaintiff stood by and saw the well drilled at great expense, made no objection when defendants could, and would, have located the well at some other point had plaintiff registered an objection, and that plaintiff by his silence and acquiescence to the drilling of the well at this particular spot is estopped from claiming any interest therein. In his reply the plaintiff pleaded he made no objection at the time in the drilling of the well because he was ignorant of his rights under the mineral deed, and that the defendants were acquainted with the exception contained therein, and that he is now willing to reimburse defendant Oil Company for the cost of the well; or if it so desires, he will execute a lease to it covering the spot where the well was drilled, reserving the customary one-eighth royalty to himself as the owner of the minerals under this particular spot.

After proof was taken and the case submitted, the chancellor held the place where the well was drilled was in the garden excepted in the mineral deed of 1889; that the plaintiff knew this well was located in this garden, or at least he had constructive knowledge thereof, and his action in permitting the defendant Oil Company to drill this well without objection and without asserting any claim to the minerals under his garden estopped him from now claiming the well. The chancellor further held that the exception in the deed of 1889 applied only to the surface of the curtilage and this exception was for the personal use and enjoyment of the grantor, George Thomas Blackburn, therefore, it terminated with his death in 1925.

The first question to determine on this appeal is whether or not the exception in the mineral deed excluded the minerals under the curtilage, or whether it merely prevented the minerals from being extracted through the surface of the curtilage. This exception is crudely drawn and somewhat ambiguous, therefore, we resort to the rule that where an exception in a deed is ambiguous it will be construed against the grantor and in favor of the grantee, 18 C. J. 345, Section 347, and that it should be construed according to the intention of the parties ascertained from the entire instrument, 18 C. J. 346, Section 350; 2 Thornton's Oil & Gas, Willis Ed. 812, Section 482; Justice v. Justice, 239 Ky. 155, 39 S. W. (2d) 250. Another rule of construction is that

the language of a deed must be construed in the light of attendant circumstances and the relation of the parties to the contract. Towns v. Brown, Ky., 114 S. W. 773; American Nat. Bank v. Madison, 144 Ky. 152, 137 S. W. 1076, 38 L. R. A., N. S., 597.

Oil and gas are regarded by laymen, as well as geologists, as being migratory, and it would be unreasonable to suppose the grantee in this mineral deed would have accepted it knowing that the grantor had excepted therefrom the minerals under the curtilage. If the grantee had accepted this deed with the minerals under the curtilage excepted therefrom, he would have known when, and if, oil or gas were discovered thereon the grantor would have the right to drill on the curtilage and extract the oil and gas from under a great part of this 65¾ acre tract through such a well. On the other hand, the grantor desired to enjoy the curtilage in peace and quietude, free from drilling and mining operations, knowing the grantee could remove all the minerals by sinking his wells and mines at other places on the farm, therefore, he excepted the curtilage from operations by the grantee. Taking into consideration the attendant and surrounding circumstances and the intention of the parties to the deed, we hold this exception related only to the surface of the curtilage and prevented the grantee from operating thereon, but it did not except the minerals under the curtilage.

Under this exception in the mineral deed the Oil Company had no right to go upon plaintiff's garden and drill this well, yet plaintiff by his silence and acquiescence is estopped from now complaining. The Oil Company could have drilled this well upon a different location on the plaintiff's farm, and it is reasonable to believe the Company would have done so had any objection been raised by plaintiff about locating the well in his garden. It spent a large sum of money in sinking this well in plaintiff's garden, and under the doctrine of estoppel, plaintiff will not be permitted to stand idly by or remain silent, until long after the completion of the well and then claim the fruits of the Oil Company's labor and expense. Martin v. Hampton Grocery Company, 256 Ky. 401, 76 S. W. (2d) 32; Wabash Drilling Company v. Ellis, 230 Ky. 769, 20 S. W. (2d) 1002. Plaintiff gives as his excuse for not registering a complaint about the well being located in his garden was he did not know his rights under the mineral deed. This

deed was of record and being in plaintiff's chain of title, he is presumed to have knowledge of what it contained. Cox v. Colossal Cavern Company, supra. It is argued by plaintiff that the Oil Company likewise had constructive knowledge of the exception in the deed, therefore, it had notice it could not drill on this spot. But when plaintiff consented for the Oil Company to drill on this location it was justified in thinking plaintiff had waived the exception in the mineral deed. Appellant cites us many cases to the effect that a person who is ignorant of a situation whereon he should have acted, is not estopped by his failure to act. Typical of the cases he cites is Shaw v. Farmers' Bank & Trust Company, 235 Ky. 502, 31 S. W. (2d) 893, wherein it was held a lienholder was not estopped to assert his lien because he did not announce same at an auction sale of the property, it not being proven he heard the auctioneer announce that the property would be sold free of encumbrance. Obviously, a man would not be called on to assert his lien when he did not hear the announcement that the property would be sold free of encumbrance. The Shaw and similar cases have no bearing on the question that plaintiff after permitting a well to be drilled in his garden can deny he is estopped from claiming the well fifteen months later because he did not know he had a right to object to it being drilled.

The chancellor adjudged the exception in the mineral deed was personal to the grantor and that it terminated with his death in 1925. In this the chancellor erred, as whatever is excepted or taken out of the grant remains in the grantor the same as his former title. Here, the grantor owned the land in fee and when he executed the deed conveying the minerals in fee he retained the title to the surface, and when he excepted the surface of the curtilage from being drilled or mined on, this exception of the surface was not merely for the life of the grantor, but was in perpetuity. 8 R. C. L. 1091, Section 148; 18 C. J. 343, Section 340; Ball v. Clark, 150 Ky. 383, 150 S. W. 359.

We are of the opinion the exception in the mineral deed related to the surface of the curtilage and did not except the minerals under the curtilage, and we are of the further opinion the plaintiff's failure to object to the location of the well in this garden at the time it was drilled estopped him from objecting fifteen months thereafter, hence, this part of the judgment is affirmed.

But as the chancellor erred in adjudging the exception was personal to the grantor and terminated with his death, that part of the judgment is reversed.