## Jones v. Travis et al.

May 21, 1946.

Duncan & Duncan for appellant.

E. Bertram for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

Delia Jones, an old Negro, residing in Wayne County, was and still claims to be the owner of two contiguous tracts of land located in that county containing in the aggregate approximately nine acres. She failed to pay the taxes on this property for the years 1926 to 1929,

inclusive, and on April 28, 1930, the sheriff sold the property for the purpose of collecting the delinquent taxes, interest, penalties and costs.

It appears from the record that appellant requested O. M. Travis, a Negro merchant residing in the same county, to buy the property, which Travis did for the sum of $6.47, the amount due on account of the delinquent taxes. On May 24, 1932, the sheriff executed and delivered to Travis a deed for the property which was duly recorded.

It further appears that Travis told Delia Jones that she could redeem the property whenever she was able, and she requested him to make no expenditures thereon, which he agreed to.

Appellant lived on the property until some time in the year 1932, when she voluntarily moved away, presumably because the small house in which she was living had become uninhabitable. Travis made no effort to take possession of the property and expended no money thereon except that he paid the taxes due in each year until 1935. In the early part of that year one Julia Koger filed a suit in the Wayne Circuit Court alleging that she had purchased this property at a tax sale, and asked for a lien on the land in the sum of approximately $30. Apparently Delia again contacted Travis and requested him to defend this suit, which he agreed to and did. Koger was victorious and judgment was entered in her favor. Travis paid the judgment, together with costs which, with the fee he paid his attorney, amounted to $66.25.

It is contended that at or about this time Delia told Travis that she would not be able to redeem the property and turned over to Travis all of her deeds, tax receipts and other title papers to the property. Thereafter Travis took possession of the property and commenced to improve it by building a fence, clearing the ground and cultivating it. In this connection he purchased grass seed, lime, fertilizer, etc., and continued to cultivate the tract until this suit was filed in February, 1945. By this action Delia seeks to recover possession of the nine acres.

Six grounds are set up in the petition as reasons why the sheriff's deed to Travis is void. Five of them are relied upon in the brief. It appears

First—that the sheriff did not attempt to distrain

any personal property owned by the appellant. Taylor et al. v. Arndell et al., 192 Ky. 249, 232 S. W. 658; Brachey v. Peddicord, 199 Ky. 75, 250 S. W. 511; Allin et al. v. City of Harrodsburg et al., 247 Ky. 360, 57 S. W. 2d 45.

Second—that he failed to send appellant a postal card fifteen days before the sale. Miller et al. v. Powers et al., 184 Ky. 417, 212 S. W. 453.

Third—the purchaser failed to give the necessary notice within fifty days after the sale.

Fourth—both tracts of land were sold when the sale of either would have realized an amount sufficient to pay the delinquent taxes, and

Fifth—the property was insufficiently described in the report of sale. (Sections 4149, 4153, and 4162, Carroll's Kentucky Statutes, which have been included in the Kentucky Revised Statutes as a part of Chapter 134.)

Appellee refuses to discuss these points in his brief and the record supports appellant's contentions. The record is poorly prepared and in places confusing, but we feel there is enough evidence to justify us in holding that the sheriff's deed to Travis is void.

As stated, appellee makes no resistance to this part of appellant's argument, but pitches his whole defense on the theory that the appellant is now estopped to assert her title. The lower court sustained this contention and dismissed the petition solely on this ground.

This brings directly before us the question of whether or not title may pass through estoppel.

In extraordinary circumstances title to real property may pass by an equitable estoppel where justice requires such action. In order to establish an equitable estoppel against one asserting title to real property, the party attempting to raise it must show an actual fraudulent representation, concealment or such negligence as will amount to a fraud in law, and that the party setting up such estoppel was actually misled thereby to his injury. In all instances a clear strong case of estoppel must be made out in order to pass title by reason thereof.

In 19 Am. Jur., Section 87, at page 744, it is said:

"In equity there may be an estoppel affecting the legal title to land, but to that end, the following grounds must appear: '(1) There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * (5) The conduct must be relied upon by the other party and thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse.' "

All of these elements are not present in this case. It is only necessary to point out that the appellee Travis has not been damaged by reason of his taking possession under the tax deed because the law gives him a first lien on the property to secure him for the payment of all sums expended by him on it. The evidence in this case indicates that the property is of sufficient value to protect Travis, and he thus may avoid a loss which he otherwise might sustain on account of the monies advanced by him for the improvement of the land.

The record is in such shape that we can not at this time determine the exact amount which Travis advanced in connection with his possession of this property. His answer alleges various items, but his proof, through oversight or otherwise, fails to establish all items alleged. It is true that he does establish some items, but we gain the impression that clearer and more convincing testimony could and should be offered in support of his allegation of expenditures.

We have concluded to reverse this case, with instructions that the court grant the parties a new trial, at which Travis will be permitted to offer proof of all expenditures made in connection with his purchase and possession of the land, and the appellant, of course, shall be entitled to produce such evidence as she may desire, to refute these claims.

The court shall determine the total amount expended by Travis on the property and make a reasonable allowance to him for the time and work he personally gave to the improvement and cultivation of the land. The aggregate of the expenditures and the allowance, if any, to Travis for his services shall be credited by all receipts realized by Travis from the cultivation of the land. Judgment shall be entered in favor of Travis for the net amount due him and he shall be adjudged a first lien on the property to secure the payment thereof. A sale of the property shall be ordered if necessary to satisfy such lien.

Wherefore, the judgment is reversed for proceedings consistent with the views herein expressed.