### Wolf v. Harper et al.

Oct. 17, 1950.

John B. Rodes, Judge

Noel F. Harper for appellant.

L. S. Rogers and B. G. Davidson for appellees.

JUDGE KNIGHT—Affirming.

This is a dispute between appellant and appellee as to the boundary line between the tracts owned by them. The tract of four acres, more or less, owned by appellant was part of a larger tract that had been owned by the father of appellee. During his lifetime the father of appellee had sold this four acre tract to his son and by mesne conveyances it became vested in Minnie Alderson, appellant's immediate predecessor in title. In all these conveyances the description of the four acre tract was as follows: *"Beginning at a red oak on the North side of Chapel Road;* thence S 75 E 22 P to a stone; thence N 18 E 29 P; thence N. W. With W. E. Spears 24 P to a stone in Trammel corner; *thence southwest a straight line to the beginning."*. (Our emphasis.)

Minnie Alderson retained title to the four acre tract for six years and when she sold it to appellant in 1947 the description above set out was changed in two respects. The first call, italicized above, was changed to read "Beginning at a stone on the North side of Chapel Road," thus making the beginning point a *stone* in the road instead of the *red oak* in the road as it was in the previous description. The other change was the last call which was changed from the italicized words shown in the above description to read *"thence in a southwestwardly direction with the fence* which is on *an agreed*

*line between this tract of land and Lena Harper to the beginning."* (Our emphasis.)

The dispute arises principally from the last call, italicized in the above descriptions, and incidentally involved is the location of the starting point, whether it is the red oak mentioned in the first description or the stone about 20 feet east of it, mentioned in the second description. Incidentally involved is the location of Trammel corner, mentioned in both descriptions, and about the location of which the parties and their witnesses are in sharp disagreement.

One thing is certain from the record and that is that there was some dispute or disagreement or uncertainty as to the location of the line between the four acre tract, then owned by Mrs. Alderson, and the remainder of the Wallace tract then owned by appellee Lena Harper. At the suggestion of the latter, the two agreed to meet on the property and establish a division line, and they did meet there on the property on September 5, 1947, each accompanied by five people to assist them, including a surveyor, Elzie Meador, who was one of Mrs. Alderson's group. The testimony as to what happened at that meeting is in utter confusion and as highly conflicting as it is possible to be, as the testimony in boundary disputes usually is. There was conflict as to whether any survey was made then by Meador; conflict as to the location of Trammel corner and the red oak on the Chapel Hill road; conflict as to whether a division line was established at that time and whether the two owners, Mrs. Harper and Mrs. Alderson, accepted the established line. Without analyzing this extensive and conflicting evidence, we are of the opinion that it was sufficient to sustain the finding of fact by the chancellor that the line between the parties was fixed by agreement between them as a result of the meeting of September 5, and we are not prepared to say that the evidence, including the deed executed shortly thereafter by Mrs. Alderson recognizing that fact, did not support his findings; certainly we entertain no more than a doubt in the matter and under these circumstances we accept the findings of fact by the chancellor. At any rate, shortly thereafter Mrs. Harper built her half of the fence on this line which her evidence tends to show was established and definitely marked on that day. Mrs. Alderson did not build her

half of the fence on the line which her testimony indicates she did not accept as the line between the tracts. The reason may have been because shortly thereafter she sold the tract she owned to Mr. Wolf, appellant herein. The meeting date for fixing the dividing line was on September 5, 1947, and Mrs. Alderson deeded the property to appellant on September 19, 1947. This deed is strong evidence that a division line was fixed and agreed to on September 5, and outweighs Mrs. Alderson's testimony to the contrary. Just two weeks after the date on which the line was supposedly fixed, Mrs. Alderson conveyed the four acre tract to appellant and in the description in that deed she recognized the newly established line by making as the starting point the *stone* in the road instead of the *red oak,* which was the starting point in the deed under which she acquired title, as heretofore referred to. She further recognized the new division line by the last call in the description in this deed of conveyance to appellant which said, *"thence in a southwesterly direction with the fence which is on an agreed line between this tract of land and Lena Harper to the beginning."* Appellee Mrs. Harper had nothing to do with the drafting of the description in this deed. Mrs. Alderson, as the seller, drew, or had drawn for her, the deed under which she was conveying the property to appellant. Actually the proof shows it was drawn by Herbert Moore, county clerk of Allen County, at the instance of Mrs. Alderson and, according to his testimony, she and appellant were present and must have given him the information on which the description was drawn. Having accepted the deed with that description, appellant on that day got title only to the property covered by the description contained in the deed which was the line agreed to on September 5 between Mrs. Alderson and Mrs. Harper.

A great deal of appellant's evidence seeks to show that the line, which appellee claims was fixed and agreed on between the then owners, was not the correct and true line between the two then owners, but that if the line were properly fixed between Trammel corner, as he contends it is located, and the red oak on Chapel Road, as he contends it is located, the division line would be about 2 poles west of the so-called "agreed line." This strip, now on appellee's tract under the lower court's judgment, would be transferred to appel-

lant's tract. We are not now concerned with the question of where this line should have been fixed but whether it was fixed by agreement on September 5, and on the question of fact, with its conflicting evidence, we follow the lower court as heretofore indicated.

This brings us to the only question of law involved in this appeal. Appellant correctly states the law to be that under the statute of frauds, title to real estate cannot pass by parol agreement or gift and that before a parol agreement is binding the location of the boundary line must be in doubt and a bona fide dispute must exist, and he cites and relies on Brock v. Muse, 232 Ky. 293, 22 S.W.2d 1034; Hoskins v. Morgan, 197 Ky. 736, 248 S.W. 210; Wallace v. Lackey, 199 Ky. 190, 250 S. W. 843; and Amburgy v. Burt & Brabb Lumber Co., 121 Ky. 580, 89 S.W. 680. We think this case comes within the doctrine laid down in Garvin v. Threlkeld, 173 Ky. 262, 190 S.W. 1092, 1093, quoted in two of the above cases and in others since decided. The rule is well stated in that case as follows: "While the validity of parol agreements to settle disputed boundaries was long resisted on the ground that, in effect, they passed the title to real property without the solemnities required by the statute, it is now settled that, where the dividing line is uncertain and there is a bona fide dispute as to its location and the parties agree on the dividing line and execute the agreement by marking the line or building a fence thereon, such an agreement is not prohibited by the statute of frauds, nor is it within the meaning of the provisions of the law that regulate the manner of conveying real estate. The reason for the rule is that the parties do not undertake to acquire and to pass the title to real estate, as must be done by written contract or conveyance. They simply by agreement fix and determine the situation and location of the thing that they already own, the purpose being simply by something agreed on to identify their several holdings and to make certain that which they regarded as uncertain."

We think, as heretofore said, that there was a dispute between the then owners, Mrs. Harper and Mrs. Alderson, as to the boundary line between them; that they settled that dispute by meeting at or near the disputed line on September 5, 1947, and establishing a line and marking it on that day; that Mrs. Harper

shortly thereafter recognized this new line by erecting her part of the fence on it and Mrs. Alderson recognized it by shortly thereafter deeding the property to appellant and referring to this boundary as the agreed line between herself and Mrs. Harper. Under these circumstances appellant cannot now establish by evidence, as he sought to do in this case, that the line that was established and marked at that time should have been established at a place where he contends in this suit it should be.

Wherefore the judgment is affirmed.