Donnie L. EMBRY and Evelyn F. Embry, his wife, Appellants,

v.

Ora TURNER and Dessie Turner, his wife, Appellees.

No. 2004–CA–002040–MR.

Court of Appeals of Kentucky.

Feb. 10, 2006.

---

13. Kentucky Revised Statutes 26A.015(2)(a) and (d) 4.

Michael L. McKown, Hartford, KY, for appellant.

Phillip L. Kimbel, Bowling Green, KY, for appellee.

Before COMBS, Chief Judge; HENRY and VANMETER, Judges.

*OPINION*

HENRY, Judge.

Donnie and Evelyn Embry (hereinafter "the Embrys") appeal from a verdict and judgment of the Butler Circuit Court, and from an order of that court overturning its prior decision to grant a new trial. On review, we affirm.

The Embrys and Ora and Dessie Turner (hereinafter "the Turners") are owners of neighboring parcels of land in Butler County, Kentucky. The parties are in dispute over the location of a boundary line between the parcels and—related to this dispute—ownership of a 15.26–acre tract of land. On October 27, 2000, the Embrys filed suit against the Turners seeking to establish the true boundary line between the properties and ownership of the disputed tract.

Following a two-day jury trial conducted in January 2002, the jury unanimously found that the Turners were the rightful owners of the disputed tract of land. On February 12, 2002, the trial judge entered a trial order and judgment consistent with the jury's verdict.

The Embrys subsequently filed a motion for judgment notwithstanding the verdict and a motion for new trial on February 21, 2002, arguing that the jury's decision was contrary to law, that it was unsupported by sufficient evidence, and that it was the result of passion and prejudice. On February 11, 2003—after an almost one-year delay—the trial judge entered an order

denying the Embrys' motion for judgment notwithstanding the verdict, but finding that "the verdict of the jury in this matter is contrary to the law, is not sustained by sufficient evidence, is against the weight of the evidence and therefore, the Plaintiffs are entitled to a new trial." Accordingly, the matter returned to litigation.

On March 1, 2004, the Turners filed a motion to reinstate and confirm the original jury verdict. The record is unclear as to what the trial judge's response was to this particular motion or what arguments were made in support of it, but on August 27, 2004, he entered an Order that reads, in relevant part, as follows:

> This matter was tried before a Jury in Butler Circuit Court and the Jury returned a verdict in favor of Defendant on January 28, 2002. Prior to this matter being tried, this Court had required the Plaintiff and Defendant to attempt to settle this matter on more than one occasion. *This Court had always felt that, for various reasons, this is a matter that should have been settled without the necessity of trial; however, the parties were unable settle [sic] the matter with the resultant jury trial.* Thereafter, on February 11, 2003, this Court entered its Order sustaining the Plaintiff's motion for a new trial but overruling the Plaintiff's motion for a judgment notwithstanding the verdict. *Candidly, this Court issued its Order for a new trial simply to allow the parties an additional chance to settle the case without the necessity of an appeal, with the parties incurring additional attorneys' fees, etc. even at that point in the litigation. This Court felt that the parties could and should be able to settle this matter but this Court was wrong.* Therefore, this Court finds that it was in error when it sustained the Plaintiff's motion

for a new trial and it is therefore this Court's prerogative to correct its earlier error. (Emphasis added).

The trial judge consequently set aside his February 11, 2003 order sustaining Embry's motion for a new trial and reinstated the trial order and judgment of February 12, 2002. This appeal followed.

This case presents two peculiarities, one minor and the other major. The minor one is procedural. It merits a brief mention here.

■ The grant of a new trial under CR [1] 59.01 terminates the running of time for appeal. CR 73.02(1)(e). That rule goes on to say that "the full time for appeal fixed in this Rule commences to run upon entry and service under Rule 77.04(2) of an order granting or denying a motion under Rules 50.02, 52.02 or 59, *except when a new trial is granted under Rule 59.*" (Emphasis added). The effect of the foregoing phrase seems to be to terminate the running of time for appeal indefinitely when a new trial is granted, because it is expected that at some point there will be a new verdict and judgment from which to appeal. This interpretation agrees with cases which have held that the filing of a CR 59 motion converts a final judgment to an interlocutory judgment. *See Personnel Board v. Heck,* 725 S.W.2d 13, 18 (Ky.App. 1986). In this case there was no new trial and therefore no new final judgment from which to appeal. Nevertheless, we are satisfied that the court continued to have jurisdiction to enter an order setting aside its prior order granting a new trial, as was done here. *See, e. g.,* CR 6.03; *see also Collins v. Wells,* 314 S.W.2d 572, 574 (Ky. 1958). We hold that the notice of appeal herein was timely when it was filed within thirty days after entry and service of the

---

1. Kentucky Rules of Civil Procedure.

docket notation (under CR 77.04) of the order setting aside the order granting a new trial. CR 73.02(1)(e).

▮ Procedural anomalies aside, once the order granting a new trial has been set aside, we are left to review the trial court's decision to overrule the motion for a new trial, and the jury verdict and judgment. We first briefly note that an order either granting or denying a new trial under CR 59.01 is not a final order and is therefore not appealable as such, but it may be reviewed, as here, on appeal from the final judgment. *Hardin v. Waddell,* 316 S.W.2d 367, 368 (Ky.1958). As a general rule, "[t]he decision of a trial court to overrule a motion for new trial will not be disturbed on appeal absent a manifest error or abuse of discretion." *Gould v. Charlton Co., Inc.,* 929 S.W.2d 734, 741 (Ky.1996) (Citation omitted). In undertaking our analysis of the trial judge's eventual decision not to allow a new trial here, we must be mindful that the decision is presumptively correct, and that we cannot reverse unless it was clearly erroneous. *McVey v. Berman,* 836 S.W.2d 445, 448 (Ky.App.1992) (Citations omitted); *see also Prater v. Arnett,* 648 S.W.2d 82, 86 (Ky.App.1983) (Citations omitted).

▮ The Embrys first argue that the jury's verdict in favor of the Turners was not supported by sufficient evidence. Accordingly, they contend that they are therefore entitled to a new trial pursuant to CR 59.01(f), which reads: "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: ... That the verdict is not sustained by sufficient evidence, or is contrary to law."

The Embrys specifically call into question the testimony of Ralph Anderson, the Turners' expert civil engineer and surveyor, arguing that his testimony "was shown not to be credible and completely unsup-portive of the Turners' position in this matter," and that it "was so incredible and contrary to common knowledge as to be manifestly without evidentiary value." However, after reviewing the references to the record made in the Embrys' brief along with the testimony at trial as a whole, we believe that the trial judge did not abuse his discretion in allowing the case to go the jury and in denying the Embrys' subsequent motion for a new trial.

▮ While the issues raised by the Embrys certainly go toward the credibility of Anderson's testimony, we do not believe that they refute the testimony to such an extent as to merit a directed verdict or new trial. Our case law has long held that "[i]t is the function of the jury to determine questions of credibility and issues of fact where the evidence is conflicting." *Woods v. Asher,* 324 S.W.2d 809, 811 (Ky. 1959) (Citations omitted). "While the trial court has a broad judicial discretion in granting or refusing a new trial, it may not set aside a verdict of a jury because it does not agree with the verdict if there was sufficient evidence to support it." *Id.* As we believe from our review of the record that there was sufficient evidence to support the jury's unanimous verdict in this case—and even though we recognize that the jury could also have reasonably rendered a verdict in favor of the Embrys— we conclude that the trial judge did not abuse his "broad judicial discretion" in denying the Embrys' motion for a new trial on this basis.

▮ The Embrys next argue—also pursuant to CR 59.01(f)—that the jury's verdict was contrary to law. Specifically, they contend that the trial judge should have granted a directed verdict in accordance with *Faulkner v. Lloyd,* 253 S.W.2d 972 (Ky.1952); *Redman v. Redman,* 240

S.W.2d 553 (Ky.1951); and *Wolf v. Harper*, 313 Ky. 688, 233 S.W.2d 409 (1950). The Embrys submit that "[a]ll three cases stand for the proposition that if parties to a boundary dispute enter into an agreed boundary line and *acquiesce* in possession that conforms to that agreement for a reasonable amount of time, said boundary becomes fixed, and a party is estopped from asserting a contrary boundary line." (Emphasis in original). They argue that the evidence presented at trial is consistent with this principle, and that the Turners should consequently be estopped from asserting a contrary boundary line here.

As an initial matter, in reviewing the record, we find no indication that the Embrys gave notice of "estoppel" as a potential basis for relief. It is well-established that estoppel must be specifically pled in order to be available as a ground for relief. *See Stansbury v. Smith*, 424 S.W.2d 571, 572–73 (Ky.1968) (Citation omitted). However, as the Turners did not object to the introduction of the issue of estoppel on this basis, we will consider it as applicable to the facts presented. *Bailey v. Thompson*, 300 S.W.2d 235, 237 (Ky.1957); *see also* CR 8.03; CR 15.02. We also note that the Embrys gave no notice of an agreed boundary or any other oral agreement as a ground for relief, but we will consider these issues nevertheless in accordance with the principles noted above.

■ The *Faulkner* decision sets forth three specific doctrines that are often used, and confused, in the context of disputed boundaries. The "agreed boundary" doctrine allows for parol agreements establishing boundary lines to be enforceable—despite the statute of frauds—"only in the event the true dividing line between two tracts is in doubt, and there is a dispute between the adjoining owners as to the exact location of the line, which depends on variable circumstances not susceptible of certain determination." *Faulkner*, 253 S.W.2d at 974, citing *Howard v. Howard*, 271 Ky. 773, 113 S.W.2d 434 (1938). The *Wolf* and *Redman* cases cited by the Embrys also set forth and rely upon the "agreed boundary" doctrine. *See Redman*, 240 S.W.2d at 553–554 (Citation omitted); *Wolf*, 313 Ky. at 692, 233 S.W.2d at 411 (Citations omitted).

We believe that the evidence here supports a doubt and dispute as to the actual boundary line; however, in order for the "agreed boundary" doctrine to apply, there must be clear proof of a parol agreement between the applicable parties setting forth an agreed boundary. *Bringardner Lumber Co. v. Bingham*, 251 S.W.2d 273, 274 (Ky.1952) (Citation omitted). Here, there is questionable evidence, at best, of an actual agreement between the Embrys and Turners setting the boundary at the "agreed line" claimed by the Embrys. Indeed, in support of their argument, the Embrys cite only to these facts:

> There was ample testimony that the Turners erected their fence on the line from point E to point F on the Anderson plat ... soon after purchasing the real estate in *1985*. The Embrys built a fence immediately adjacent to the Turner fence (on the line from point E to point F on the Anderson survey plat) in approximately 1996 or 1997, and the Turners did nothing regarding said fence until 2000, when the Turner surveyor began setting stakes on the Embry's [sic] side of the fence .... In fact, up to the filing of the lawsuit in 2000, Mr. Turner continued to acquiesce in the boundary as it was the Embrys who filed suit!

(Emphasis in original). Nothing here or otherwise in the record illustrates an actual agreement between the Embrys and the Turners setting the boundary line at the location urged by the Embrys. Such an

agreement is a required element for relief under all three of the cases submitted by the Embrys. Consequently, we do not believe that the trial judge abused his discretion in declining to award the Embrys a directed verdict or new trial on this ground.

■ *Faulkner* also sets forth that an oral agreement that does not fit within the bounds of the "agreed boundary" doctrine can still "fix" an agreed boundary line if the applicable parties "take possession to the agreed line and exercise possession for the statutory period." *Faulkner*, 253 S.W.2d at 974, citing *Combs v. Combs*, 240 S.W.2d 558 (Ky.1951). Again, however, the record reflects little evidence of an oral boundary agreement between the Embrys and the Turners. Moreover, as *Faulkner* further notes: "In the last instance, the fixing of the line at the point agreed upon or acquiesced in by the parties is not an enforcement of the agreement but is upon the theory that adverse possession precludes either party from claiming beyond the agreed line." *Id.* Consequently, under this theory, parties are required to recognize the agreed boundary as the applicable line for fifteen years or more before courts will recognize it as the true location. *Combs*, 240 S.W.2d at 559, citing *Lewallen v. Mays*, 265 Ky. 1, 95 S.W.2d 1125 (Ky. 1936). As the Embrys did not place their fence on the disputed boundary line and essentially "claim" the disputed property as their own until 1996 or 1997, the applicable fifteen-year period was not satisfied. Accordingly, the Embrys were also not entitled to relief under this ground.

*Faulkner* finally observes that the doctrine of estoppel can often come into play in disputed boundary cases. Specifically, the opinion notes:

> In the absence of a valid boundary agreement or adverse possession, a line may nevertheless become fixed by the operation of an estoppel. A landowner who knows the true line and silently permits an adjoining owner to make substantial improvements unknowingly past the line is estopped to claim to the true boundary. The same is true if a landowner by conduct or assertions as to the boundary line is instrumental in having the improvements made past the true line.

*Faulkner*, 253 S.W.2d at 974, citing *Martin v. Hampton Grocery Company*, 256 Ky. 401, 76 S.W.2d 32 (1934). As stated by this court in *Gosney v. Glenn*, 163 S.W.3d 894 (Ky.App.2005):

> The essential elements of equitable estoppel are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Id.* at 899 (Citation omitted). Also of particular note here, our predecessor court held in *Jones v. Travis*, 302 Ky. 367, 194 S.W.2d 841 (1946), as follows:

> In extraordinary circumstances title to real property may pass by an equitable estoppel where justice requires such action. In order to establish an equitable estoppel against one asserting title to real property, the party attempting to raise it must show an actual fraudulent

representation, concealment or such negligence as will amount to a fraud in law, and that the party setting up such estoppel was actually misled thereby to his injury. In all instances a clear strong case of estoppel must be made out in order to pass title by reason thereof.

*Jones,* 302 Ky. at 369, 194 S.W.2d at 842.

The Embrys suggest that the Turners' purported "acquiescence" in their fence for four to five years without filing any sort of legal action is sufficient to establish estoppel. However, "[m]ere acquiescence ... is not sufficient to create an estoppel. The party asserting it must have been induced to act to his detriment or misled to his injury." *Thomas v. Holmes,* 306 Ky. 632, 637, 208 S.W.2d 969, 972 (Ky.1948), citing *Mercer v. Federal Land Bank of Louisville,* 300 Ky. 311, 188 S.W.2d 489 (1945); *see also General Motors Acceptance Corp. v. Lincoln National Bank,* 18 S.W.3d 337, 340 (Ky.2000), citing *Nolin Production Credit Association v. Canmer Deposit Bank,* 726 S.W.2d 693, 703–04 (Ky.App.1986). Although Mr. Embry's testimony reflects that, at some point, Mr. Turner apparently voiced no objection to Mr. Embry's placing a boundary marker next to the Turner fence, Mr. Embry also testified that Mr. Turner objected to the Embrys' building their fence on what he believed to be his property, and that he placed surveying stakes on the disputed parcel in 2000—just before the Embrys filed suit. The Embrys have offered no arguments here with respect to the required elements of estoppel and have directed us to nothing within the record to suggest any sort of false representation, concealment of material fact, detrimental reliance, or any of the other facts required to prove a claim of estoppel. We therefore conclude that the trial judge did not abuse his discretion in failing to provide the Embrys relief on this ground.[2]

The Embrys next argue that the jury incorrectly based its decision on passion or prejudice. Accordingly, they contend that they are therefore entitled to a new trial pursuant to CR 59.01(d), which reads: "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: ... Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the Court."

The Embrys assert that the jury essentially rendered a verdict in favor of Mr. Turner because its members felt sorry for him. In support of this contention, the Embrys submit an affidavit from James Crafton, the foreman of the jury that decided the case. In this affidavit, Mr. Crafton expresses his belief that some of the jurors that voted for Mr. Turner did so because of his advanced age and because he looked confused on the stand. However, the affidavit also indicates that a number of the jurors voting for Mr. Turner "thought that his surveyor packed more weight." In light of this conflicting evidence, we cannot say that the trial judge

---

**2.** We also note that the Embrys failed to attempt to submit the issue of estoppel or of an agreed boundary to the jury in its proposed instructions even though—as to estoppel in particular—these are questions of fact to be determined by the circumstances of each case. *Weiand v. Board of Trustees of Kentucky Retirement Systems,* 25 S.W.3d 88, 91–92 (Ky. 2000) (Citations omitted); *McKenzie v. Oliver,* 571 S.W.2d 102, 106 (Ky.App.1978) (Citations omitted); *Wolf,* 313 Ky. at 692, 233 S.W.2d at 411. Consequently, we have reservations as to whether the trial judge had any obligation to consider the Embrys' argument in the first place. As this issue was addressed by neither the trial judge nor the parties at any point during these proceedings, we consider it only in passing.

abused his discretion in failing to grant a new trial on the grounds of passion and prejudice.

 The Embrys also contend that the trial judge erred by allowing Mr. Turner's attorney to improperly lead him on direct examination during his testimony about the location of the parties' common boundary line. They contend that "[b]y virtue of this leading, Mr. Turner was allowed to change his erroneous testimony on the *critical* issue of where the historical boundary line was between the parties." (Emphasis in original).

 Our evidentiary rules state that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." KRE 611(c). We must review the judge's decision here with an understanding that "[w]hile the use of leading questions on direct examination is generally unacceptable . . . judgments will not be reversed because of leading questions unless the trial judge abused his discretion and a shocking miscarriage of justice resulted." *Tamme v. Commonwealth*, 973 S.W.2d 13, 27 (Ky.1998) (Citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000) (Citation omitted). In following this standard, we also note that trial courts are obligated to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to: (1) Make the interrogation and presentation effective for the ascertainment of the truth; (2) Avoid needless consumption of time; and (3) Protect witnesses from harassment or undue embarrassment." KRE 611(a).

After reviewing Mr. Turner's testimony in its entirety—including the specific in-stance complained of by the Embrys—we are satisfied that the trial judge did not abuse his discretion in allowing Mr. Turner's attorney to lead him in the manner noted above, and that a "shocking miscarriage of justice" did not consequently result. Therefore, we must again reject the Embrys' argument as to this issue.

The Embrys' final argument is that the trial judge erred when he reinstated the jury verdict on his own accord based on inadmissible settlement negotiations. They specifically point to an April 9, 2002 supplemental response to the Embrys' motion for new trial filed by the Turners stating that the Embrys would not agree to a settlement and contend that "[a]lthough [the trial judge] entered an order on May 20, 2002 striking said supplemental response, the trial court had already been tainted by the inadmissible settlement negotiation information." We fail to see how this was the case, however, given that the trial judge ultimately granted the Embrys' motion for a new trial after this pleading was submitted and stricken.

The Embrys further argue that "[t]he fact that the parties were unable to settle this matter after the Court entered an Order granting a new trial, and that the Court might have perceived the Embrys to be the obstinate party in the settlement negotiations, should not form a basis for the Court to set aside its Order granting a new trial." We are not compelled to accept this argument because it ignores the fact that—by the trial judge's own belated admission—the original order awarding a new trial had no actual foundation in CR 59.01 but was instead based upon the judge's desire to compel a settlement. To allow the Embrys to benefit from this conduct would be highly inequitable, at best. Consequently, we do not believe that the Embrys are entitled to relief on this ground.

Finally, we must address the major peculiarity present in this case—the trial judge's grant of a new trial upon grounds that he ultimately admitted that he fabricated in an effort to coerce a settlement. It is one thing for a judge to mediate settlement of a case prior to trial, which may be done if ethical requirements are scrupulously observed. *See* SCR [3] 4.300 Canon 3 B(7)(d); *Home Depot U.S.A., Inc. v. Saul Subsidiary I Ltd. Partnership,* 159 S.W.3d 339, 341 (Ky.App.2004). It is quite another to set aside an otherwise valid jury verdict for reasons of personal belief or bias. The overturning of a jury verdict in favor of a new trial is a matter of the utmost seriousness, and should only occur when the specific criteria set forth in CR 59.01 are carefully considered and met. To flout those criteria due to one's personal belief about a case is incompatible with our system of justice. Such conduct tends to erode public confidence in the fairness and impartiality of our court system. Nearly four years have passed since a Butler County jury unanimously decided this case in favor of the appellees. At least two years of delay in bringing this case to its ultimate conclusion was caused by the trial judge's improper—even if well-intentioned—intervention. His interference was inappropriate at best and injudicious at worst.

The judgment of the Butler Circuit Court is affirmed.

ALL CONCUR.

---

**3.** Kentucky Rules of the Supreme Court.

