RENDERED: JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0262-MR

BEN YEAKLEY                                                        APPELLANT

v.                  APPEAL FROM PIKE CIRCUIT COURT
                    HONORABLE HOWARD KEITH HALL, JUDGE
                    ACTION NO. 17-CI-01234

BARRY L. BOYD AND DEBORAH L.
BOYD                                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND JONES, JUDGES.

DIXON, JUDGE: Ben Yeakley appeals from the judgment of the Pike Circuit

Court finding that his property consists of the 22.4 acres identified in a survey

conducted by Tim Malone, plus a certain smaller rectangular area of approximately

one-third of an acre obtained through adverse possession, entered on August 2,

2021, and amended on February 2, 2022. Following review of the record, briefs,

and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

The land at issue herein originally belonged to Tandy Stratton and his wife. In 1927, the Tandy Stratton Farm, consisting of approximately 80 acres, was divided into four nearly equal lots and gifted to the four Stratton children. The descriptions in the deeds have remained unchanged. Lot 4 shares a common boundary line with Lot 3; unfortunately, many of the calls in the deeds relied on natural monuments that have not been located during this dispute. This action centers on where that shared boundary line is and whether it should be modified due to equitable estoppel and/or adverse possession.

Barry and Deborah Boyd have owned Lot 3 since 1979. Mary Montgomery purchased Lot 4 in 1984 and added a mobile home. In 1994, Montgomery built another home on the property and removed the mobile home. In 2017, Yeakley acquired Lot 4 from Montgomery.

Each lot has a portion on the flatter bottomland of a hollow on which dwellings and other buildings have been constructed. The remainder of the property rises steeply in elevation and has remained unimproved.

At some unknown time, a fence was erected[1] which Montgomery and Yeakley believed to be on the property line of Lots 3 and 4. Montgomery had a

---

[1] Yeakley admits there is no evidence of when the fence was built.

survey performed by Gary Ousley, prior to conveying Lot 3 to Yeakley, which showed the boundary line along the fence.

Although Barry Boyd was unsure of the location of the property line, he asserted the fence was not on it but, instead, ran across Lot 3. The Boyds claim they mentioned this to Montgomery's husband. No legal action was taken until the Boyds filed this action in 2017, after Yeakley purchased Lot 4 and put a chain across the road. The Boyds hired Chris Slone and later Tim Malone to perform surveys of the property. Although the lines drawn by these two surveyors differed, neither found the fence to be on the boundary line.

As it turns out, the mobile home placed by Montgomery in 1984 was on Lot 3. The area around the mobile home used by Montgomery was about one-third of an acre. The area on the side of the fence across Lot 3 closest to Lot 4 is about 14.3 acres. If that area were added to Lot 4, that tract would be 36.7 acres and the Boyds' tract would be reduced to 11.9 acres.

Following a bench trial, the trial court determined Malone's survey to be the most credible. The court also found that a small portion of Lot 3 – the approximate one-third acre around the mobile home – had been adversely possessed by Montgomery and belonged to Yeakley. Yeakley moved the court to alter, amend, or vacate its judgment; the court amended to add a more specific description of the adversely possessed land. This appeal followed.

-3-

## STANDARD OF REVIEW

The standard of appellate review in land dispute actions is:

> factual findings "shall not be set aside unless clearly
> erroneous, and due regard shall be given to the
> opportunity of the [trier of fact] to judge the credibility of
> the witnesses." A factual finding is not clearly erroneous
> if it is supported by substantial evidence. Substantial
> evidence is evidence of substance and relevant
> consequence sufficient to induce conviction in the minds
> of reasonable people. "It is within the province of the
> fact-finder to determine the credibility of witnesses and
> the weight to be given the evidence." With respect to
> property title issues, the appropriate standard of review is
> whether the trial court was clearly erroneous or abused its
> discretion, and the appellate court should not substitute
> its opinion for that of the trial court absent clear error.

*Cole v. Gilvin*, 59 S.W.3d 468, 472-73 (Ky. App. 2001) (footnotes omitted).

## LEGAL ANALYSIS

On appeal, Yeakley first argues the Boyds filed their action beyond the applicable statute of limitations. KRS[2] 413.010 provides "an action for the recovery of real property may be brought only within fifteen (15) years after the right to institute it first accrued to the plaintiff[.]" It was only after Yeakley placed a chain on the roadway in 2017 that the Boyds' right to use their property was obstructed. Accordingly, we cannot say the action was time-barred.

---

[2] Kentucky Revised Statutes.

Yeakley next argues the Boyds' claims are barred by equitable estoppel. It is well-settled:

> The essential elements of equitable estoppel are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Embry v. Turner*, 185 S.W.3d 209, 215 (Ky. App. 2006).

> It is also long-established:

> In **extraordinary circumstances** title to real property may pass by an equitable estoppel where **justice requires** such action. In order to establish an equitable estoppel against one asserting title to real property, the party attempting to raise it must show an **actual fraudulent representation, concealment or such negligence as will amount to a fraud in law**, and that the party setting up such estoppel was actually **misled** thereby to his injury. In all instances a **clear strong** case of estoppel must be made out in order to pass title by reason thereof.

*Jones v. Travis*, 302 Ky. 367, 369, 194 S.W.2d 841, 842 (1946) (emphasis added).

In the case herein, no one knows who constructed the original fence.

Yeakley claims the fence was erected in 1927 but has no supporting evidence. The

-5-

Boyds contend they never made any representations to Montgomery or Yeakley that the fence marked the boundary; in fact, they stated that the fence did ***not*** mark the boundary. Also contrary to Yeakley's assertions, the fact that Barry added to the fence in the early 1980s to keep his horses enclosed does not evince that he believed the fence to mark his property line, nor does it amount to acquiescence that the fence marked the boundary.[3] Accordingly, there was no "actual fraudulent representation, concealment or such negligence as will amount to a fraud in law" as required for equitable estoppel.

Yeakley further contends the trial court erred in finding that he had obtained only the approximately one-third acre around the mobile home rather than the entire area on his side of the fence. The elements of adverse possession are: "1) possession must be hostile and under a claim of right, 2) it must be actual, 3) it must be exclusive, 4) it must be continuous, and 5) it must be open and notorious." *Elsea v. Day*, 448 S.W.3d 259, 263 (Ky. App. 2014) (internal quotation marks and citations omitted). All elements must be maintained for 15 years and proven by clear and convincing evidence. If needed, "adverse possession of a grantee may be tacked on to that of his grantor to complete the statutory period." *Martin v. Kane*, 245 S.W.2d 177, 178 (Ky. 1951).

---

[3] Even if that action constituted acquiescence, "[m]ere acquiescence . . . is not sufficient to create an estoppel. The party asserting it must have been induced to act to his detriment or misled to his injury." *Embry*, 185 S.W.3d at 216 (citations omitted).

"[I]n order to make an adverse claim definite, the adverse possessor must have either some color of title that will show the extent of the claim or there must be a definite boundary." *Appalachian Reg'l Healthcare, Inc. v. Royal Crown Bottling Co., Inc*., 824 S.W.2d 878, 880 (Ky. 1992). Here, Yeakley contends the fence constituted a definite boundary, as required for him to obtain the land from Lot 3 on his side of the fence through adverse possession. He cites *Vick v. Elliot*, 422 S.W.3d 277, 280 (Ky. App. 2013), which provides, "[t]he **construction** of a fence which indicates a clear claim to a parcel of property **may** satisfy the element of possession in an adverse possession claim." (Emphasis added.)

In the case herein, Montgomery, Yeakley, nor the Boyds constructed the fence; it existed before they possessed either lot. To satisfy the "open and notorious" element, "the possessor must 'openly evince a purpose to hold dominion over the property with such hostility that will give the non-possessory owner **notice** of the adverse claim.'" *Id.* at 280 (emphasis added). Thus, the mere continued existence of the fence failed to satisfy this element. It was not until Yeakley put a chain across the road that the Boyds were put on notice that the part of their land on the other side of the fence might become adversely possessed. This, of course, does not apply to the one-third acre on which Montgomery's mobile home was situated, and that Montgomery otherwise occupied, and that land is not in dispute on appeal. Thus, we find no error.

Yeakley's final argument is the expert testimony of surveyor Ousley establishes that the fence marks the property line. However, Ousley testified that he had to reverse direction along one of the lines in drawing the boundary lines, a practice that – while not unprecedented – is quite unusual.

Yeakley claims there was not sufficient evidence for the trial court to rely on Malone's survey. However, the court noted "[n]either the Plaintiffs' nor the defendant's surveyors were able to locate the black oak described as the beginning point." The court also noted "Malone was able to take an existing natural monument, the knob called for in the Deed description, and work backwards down the point and across the bottom to establish where the beginning point should have been, thereby establishing the boundary between Lots 3 and 4." The court further noted that Malone located a fence inside Lot 3, "but no fence is called for as a boundary with Lot 4 in the Deed description." By contrast, the court found Ousley's survey "relies solely on the location of the pasture fence, which was not called for as the boundary in the Deed description, to establish the line between Lots 3 and 4."

This case presents a classic situation of competing surveys, and absent clear error, the trial court was free to choose which survey it found more credible. Seeing no clear error from the record, we must affirm.

**CONCLUSION**

Therefore, and for the foregoing reasons, the judgment entered by the

Pike Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEF FOR APPELLANT:       BRIEF FOR APPELLEES:

Todd P. Kennedy             Michael de Bourbon
Pikeville, Kentucky           James P. Pruitt, Jr.
                            Pikeville, Kentucky