GENERAL MOTORS ACCEPTANCE
CORPORATION, Appellant,

v.

LINCOLN NATIONAL
BANK, Appellee.

No. 98–SC–0489–DG.

Supreme Court of Kentucky.

Jan. 20, 2000.

As Modified on Denial of Rehearing
June 15, 2000.

John T. McGarvey, Thomas C. Fenton, Morgan & Pottinger, P.S.C., Louisville, for appellant.

K. Gregory Haynes, Kevin P. Crooks, Wyatt, Tarrant & Combs, Louisville, for appellee.

LAMBERT, Chief Justice.

The issue presented is whether a bank may apply the cash proceeds of collateral to overdrafts allowed a depositor, thereby defeating established priorities, on grounds of the "ordinary course of business" exception contained in official comment 2(c) to UCC § 9–306(2) (KRS 355.9–306(2)). In the case at bar the trial court and the Court of Appeals allowed such a result. We reverse.

From 1976 through 1991, General Motors Acceptance Corporation ("GMAC") provided floor plan financing to Donohue Ferrill Motor Company, Inc., ("Donohue Ferrill"), a Chevrolet dealer in Hodgen-

ville. Under the floor plan agreement, GMAC lent funds to Donohue Ferrill to purchase new vehicle inventory. Donohue Ferrill granted GMAC a security interest in all of its vehicle inventory and all of the proceeds of that inventory. The security agreements and financing statements were executed by A.G. Back, Jr., the founder of Donohue Ferrill and its president from 1966 through August 1990. Back was also a longtime officer of Lincoln National and chairman of its board of directors. Back was board chairman of Lincoln National when he, as president of Donohue Ferrill, signed the security agreement in favor of GMAC on September 26, 1983.

Routinely, Lincoln National's president, Robert D. Haynes, dealt with customer overdrafts. The established procedure when an account was overdrawn was for Haynes to contact the customer, inquire about the problem, and decide whether to authorize payment of the overdraft or return the check. However, this procedure was not followed when Donohue Ferrill's account was overdrawn. All of Donohue Ferrill's overdrafts were handled by Back personally, not by Haynes. For 38 of the 62 business days of September, October, and November 1991, Donohue Ferrill's account was overdrawn. Lincoln National honored 133 overdrafts during these three months and charged Donohue Ferrill a total of $1,995 in fees. The total amount of the overdrawn balances for those 38 days was $1,943,306.25.

In December 1991, Donohue Ferrill failed as a business and defaulted on its obligations to GMAC. After liquidation of its assets, Donohue Ferrill remained indebted to GMAC in the amount of $308,088.22. Prior to Donohue Ferrill's business failure, in September, October, and November 1991, Donohue Ferrill sold six trucks that were covered by GMAC's perfected security interest. The proceeds from these sales were deposited in a demand deposit (or checking) account Donohue Ferrill maintained at Lincoln National.

The proceeds, along with other funds in the checking account, were applied to Donohue Ferrill overdrafts at Lincoln National. Donohue Ferrill never paid GMAC for the six trucks, even though the security agreement specifically required Donohue Ferrill to "faithfully and promptly remit" from the proceeds of the vehicles the amounts loaned by GMAC.

GMAC sued Lincoln National in Larue Circuit Court for $124,610.80 in proceeds from the sale of these six vehicles. GMAC argued that these proceeds were identifiable upon their deposit to the checking account and the trial court so found.[1] Thus, GMAC argues, the bank's application of those funds to Donohue Ferrill's overdrafts constituted a conversion of its monies by the bank. GMAC based its claim upon KRS 355.9–306(2), which states

> Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

The bank sought dismissal of the complaint, contending that it took the funds free of any security interest because the funds were used to cover the overdrafts in the ordinary course of the bank's business with Donohue Ferrill. The bank also argued that GMAC's complaint should fail because GMAC acquiesced in the bank's possession and use of the proceeds.

The trial court granted the bank's motion for summary judgment. In reaching this result, the trial court found that the funds in question, upon deposit with other funds in the Donohue Ferrill account, lost their identifiable security cloak because the funds were credited by the bank against the account overdrafts in the ordinary course of its business with Donohue Ferrill. *See* UCC § 9–306(2), Official

1. CR 52.01.

Comment 2(c), *infra.* Furthermore, the trial court believed GMAC was aware of the bank's custom of covering Donohue Ferrill's overdrafts, and, under the floor plan agreement, GMAC had access to Donohue Ferrill's bank records, which clearly revealed the pattern of overdrafts. Moreover, despite GMAC's manifest knowledge of Donohue Ferrill's financial difficulties, GMAC did not request that the bank separate or otherwise treat differently the funds generated by Donohue Ferrill from the sale of the floor plan vehicles. Finally, the trial court concluded that even if the subject transfers were not legitimized by the "ordinary course of business" principle, GMAC's claims would be barred because of GMAC's acquiescence in the banking relationship between Donohue Ferrill and Lincoln National.

The Court of Appeals affirmed, holding that Lincoln National's actions did not exceed the scope of its "ordinary course of business." For its interpretation of KRS 355.9–306(2), the Court of Appeals relied upon the official commentary to the UCC as follows:

Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party.

UCC § 9–306(2), Official Comment 2(c).[2] The Court of Appeals also noted that KRS 355.4–401(1) specifically permits a bank to honor an overdraft if it is "authorized by the customer and is in accordance with any agreement between the customer and the bank." Without providing an explanation, the court stated that it was not persuaded by the reasoning presented in a factually similar Iowa case, *C & H Farm Service of Iowa v. Farmers Savings Bank,*[3] which construed the identical UCC language as favoring the secured party against the bank. Upon the view that the reasoning and the application of the law expressed in *C & H Farm Service of Iowa* is proper, we now reverse the courts below.

Payment of an overdraft by a bank is of the nature of a loan to the account owner and is premised upon the condition of repayment.[4] Thus, Lincoln National made loans to Donohue Ferrill in the amount of the overdrafts paid. Since the bank had no security for such loans, it was an unsecured creditor of Donohue Ferrill.

KRS 355.9–201[5] gives a secured party priority over all others in the collateral or its proceeds, except as provided elsewhere by Article 9. Under KRS 355.9–306, a security interest continues in the identifiable proceeds of collateral. Thus, as an unsecured creditor, Lincoln National was without any right to take or retain assets of Donohue Ferrill that were subject to the perfected security interest of GMAC, unless allowed by an exception to KRS 355.9–306.

The trial court and the Court of Appeals found such an exception in Official Comment 2(c) to the UCC § 9–306 (KRS 355.9–306), holding that the proceeds of

---

**2.** KRS 355.1–110 permits the use of the official comments in the construction and application of Chapter 355; *see Ranier v. Gilford,* Ky.App., 688 S.W.2d 753, 755 (1985) (stating that there seemed to be no reason why the Official Comment to 9–306 should not be adopted).

**3.** 449 N.W.2d 866 (Iowa 1989).

**4.** *Dalton v. First National Bank of Grayson,* Ky.App., 712 S.W.2d 954, 957 (1986).

**5.** KRS 355.9–201 states: "Except as otherwise provided by this chapter, a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

the collateral used to cover prior overdrafts were transferred out of Donohue Ferrill's account in the ordinary course of business. We disagree with this interpretation. Although the commentary provides an exception for proceeds from the debtor's checking account and paid in the ordinary course of the operation of the debtor's business, this exception does not apply when a bank seizes funds deposited in a customer's account and applies such funds to payment of overdrafts or antecedent debts. Such an interpretation would eviscerate the security interest in proceeds of collateral contrary to KRS 355.9–306(2) and permit a bank that had made an unsecured loan to leapfrog secured creditors. This view was recognized in *Linn Cooperative Oil Co. v. Norwest Bank Marion N.A.:*

> When encumbered collateral is applied to an antecedent obligation, the transferor's ability to satisfy secured creditors is reduced proportionately. That result occurs in transfers of cash proceeds collateral to the same extent as it occurs in transfers of goods subject to a security interest.[6]

The Supreme Court of Iowa recently confronted the issue here in a case bearing great similarity to this case, *C & H Farm Service Co. v. Farmers Savings Bank.*[7] In circumstances where a secured creditor had priority over the bank by virtue of a security agreement, the issue was whether the bank could reimburse itself for overdrafts paid from identifiable cash proceeds deposited to its customer's account. Analyzing the issue, the Iowa court stated:

> When the bank paid Schellhorns' checks regardless of the fact that there were no funds in Schellhorns' account, the bank became a creditor of Schellhorns and

accepted the risk of an unsecured loan to them . . . .[8]

C & H's security interest in the proceeds of its collateral, therefore, takes priority over the bank's attempted setoff. To the extent that the bank applied deposited proceeds of C & H's collateral to reduce the debit balance of Schellhorns' account, the bank is liable to C & H for conversion.[9]

(Citations omitted.) Summarizing its view, the Court said:

> Our conclusion here . . . is that a secured party's right to proceeds of collateral deposited to the debtor's bank account is superior to the bank's right to a setoff of the same proceeds against amounts the debtor owes the bank. In other words, the bank may not loan money to Schellhorns by paying Schellhorns' overdrafts and then expect to "jump over" C & H's priority in identifiable proceeds of C & H's collateral. The bank is liable for conversion of C & H's collateral to that extent.[10]

(Citations omitted.)

▆▆▆ We have considered the Bank's contention that GMAC's claim of conversion should fail due to acquiescence in the relationship between Donahue Ferrill and the Bank. We believe this contention is sufficiently answered by our analysis of the law contained hereinabove and the paucity of evidence that GMAC knew of the Bank's practice of allowing such overdrafts. The evidence was woefully inadequate to establish that GMAC voluntarily relinquished a known right effectively waiving the provisions of KRS 355.9–306(2) and subordinating its priority as a creditor to that of the Bank. In any event, mere acquiescence is insufficient to constitute estoppel.[11]

**6.** 444 N.W.2d 497, 499 (Iowa 1989).

**7.** 449 N.W.2d 866 (Iowa 1989).

**8.** *Id.* at 877.

**9.** *Id.* at 876.

**10.** *Id.* at 876–877.

**11.** *Nolin Production Credit Association v. Canmer Deposit Bank,* Ky.App., 726 S.W.2d 693, 703–704 (1986).

For the foregoing reasons, the decision of the Court of Appeals is reversed, and this cause is remanded to the trial court for entry of judgment consistent herewith.

COOPER, GRAVES, JOHNSTONE, KELLER, STUMBO and WINTERSHEIMER, JJ., concur.