KENTUCKY HIGHLANDS
INVESTMENT CORPORATION,
Appellant,

v.

BANK OF CORBIN, INC., Appellee.

No. 2005–CA–000686–MR.

Court of Appeals of Kentucky.

Sept. 15, 2006.

Discretionary Review Denied by
Supreme Court April 11, 2007.

D. Duane Cook, Stamping Ground, KY, for appellant.

Randy D. Shaw, Adam R. Kegley, Lexington, KY, for appellee.

Before COMBS, Chief Judge; GUIDUGLI, Judge; HUDDLESTON,[1] Senior Judge.

*OPINION*

COMBS, Chief Judge.

Kentucky Highlands Investment Corporation ("Kentucky Highlands") appeals from a summary judgment granted by the Whitley Circuit Court in favor of the Bank

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

of Corbin, Inc., ("the Bank"). The appeal involves a priority dispute between Kentucky Highlands and the Bank of Corbin. The Bank claimed a right of set-off against funds in a commercial deposit account. Kentucky Highlands asserted a perfected security interest in the same funds. After considering the relevant provisions of Kentucky's commercial code together with the arguments of counsel, we affirm the summary judgment of the trial court.

Kentucky Highlands was the primary lender to Tri–County Manufacturing and Assembly Incorporated ("Tri–County Manufacturing") and its affiliates, including Tritech Electronics, LLC ("Tritech"). Various loans extended to these debtors by Kentucky Highlands totaled more than five million dollars. Kentucky Highlands contended that the loans were secured by a properly perfected security interest in all of the debtors' personal property and an assignment of the debtors' customer accounts receivable.

Tritech maintained a commercial deposit account with the Bank of Corbin. The Bank obtained a security interest in the deposits held at the Bank pursuant to a loan agreement dated April 6, 2001, between Tritech and the Bank, and it held a well-established right of set-off against the account.

Customer payments generally were **not** deposited into Tritech's account. Instead, provisions of its loan agreements with Kentucky Highlands required Tritech to direct customers to remit their payments directly to Kentucky Highlands. The Tritech deposit account was funded primarily by transfers from an account held by Tri–County Manufacturing. Tri–County Manufacturing funded those advances on a line of credit provided by Kentucky Highlands. Kentucky Highlands was aware of Tritech's account with the Bank of Corbin. Pursuant to the provisions of KRS [2] 355.9–104(1), it could have taken steps to protect itself by taking control of the account. But it made no attempts to do so. KRS 355.9–104 provides as follows:

(1) A secured party has control of a deposit account if:

(a) The secured party is the bank with which the deposit account is maintained;

(b) The debtor, **secured party, and bank have agreed** in an authenticated record **that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account** without further consent by the debtor; or

(c) The secured · party becomes the bank's customer with respect to the deposit account.

(Emphasis added).

In March or April of 2002, the relationship between Kentucky Highlands and its debtors began to deteriorate. An audit conducted by Kentucky Highlands in mid-July 2002 indicated that its debtors had overstated available accounts receivable and inventory by nearly 1.5 million dollars. In a meeting held on July 24, 2002, the debtors were instructed by Kentucky Highlands not to collect any accounts receivable. By July 26, 2002, at the latest, Kentucky Highlands believed that its debtor's president was engaged in illegal activity. (Deposition of Ray Moncrief, Chief Executive Officer of Kentucky Highlands, at 85.) Nevertheless, Kentucky Highlands did not invoke or initiate any judicial process to assert control over Tritech's accounts receivable.

**2.** Kentucky Revised Statutes.

Kentucky Highlands alleged that from approximately July 2, 2002, and continuing through approximately August 2, 2002, Tritech began depositing customer payments totaling nearly $400,000.00 into its own account at the Bank. Kentucky Highlands claimed that the Bank was paying overdrafts on the account during this period of time. Kentucky Highlands alleged that the Bank applied the funds deposited by Tritech to its overdrafts and to its other credit accounts held by the Bank—despite the Bank's knowledge that Kentucky Highlands held a properly perfected security interest in all of the debtors' accounts receivable.

On February 19, 2004, Kentucky Highlands filed a complaint against the Bank, alleging that Tritech had breached several of its agreements with Kentucky Highlands. Kentucky Highlands claimed that by depositing customer payments directly into its account with the Bank, Tritech converted funds belonging to Kentucky Highlands. Kentucky Highlands also alleged that the Bank knew—or should have known—that Tritech's deposits amounted to a conversion of its funds. Kentucky Highlands claimed that the Bank had colluded with its debtors to divert the proceeds of the collateral assigned to Kentucky Highlands. Kentucky Highlands charged that the Bank had "aided and abetted Tritech in this conversion of funds belonging to Kentucky Highlands." (Complaint at 3.) Kentucky Highlands sought recovery of the customer payments deposited into the subject account.

In its answer, the Bank denied the allegations. The Bank claimed that it had a superior right of set-off against the disputed funds under the provisions of Kentucky's commercial code (as amended) and that it had no duty to monitor deposits being made into the subject account or to scrutinize the status of the collateral claimed by Kentucky Highlands. Invoking the provisions of Kentucky's commercial code, the Bank filed a comprehensive motion for summary judgment.

In its response to the Bank's motion for summary judgment, Kentucky Highlands argued strenuously and persuasively that the decision of the Kentucky Supreme Court in *General Motors Acceptance Corporation v. Lincoln National Bank*, 18 S.W.3d 337 (Ky.2000), ("*GMAC*"), controlled the dispute and that *GMAC* had not been superseded by subsequent amendments to the commercial code. It also argued that it had offered sufficient evidence of collusion among the parties and related entities to preclude summary judgment on that separate count in the Complaint.

The trial court granted the Bank's motion for summary judgment on November 24, 2004. It ruled that the 2001 amendments to Kentucky's commercial code governed the action and that under these statutory provisions, Kentucky Highlands had no viable claims against the Bank. The court reasoned that the Bank's security interest in the deposit account had priority over the security interest held by Kentucky Highlands and that the Bank had a right of set-off against all of the funds deposited into Tritech's account that was superior to any right possessed by Kentucky Highlands. In addition, the court rejected the contention of Kentucky Highlands that the Bank had a duty to monitor Tritech's account in an effort to determine if its deposits might be proceeds of accounts receivable claimed by another secured creditor (namely, Kentucky Highlands). This appeal followed.

The standard of review governing an appeal of a summary judgment is well settled. We must determine whether the trial court erred when it concluded that there was no genuine issue as to any mate-

rial fact and that the moving party was entitled to a judgment as a matter of law. *Scifres v. Kraft,* 916 S.W.2d 779 (Ky.App. 1996). Summary judgment is appropriate:

if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56.03. It is a stringent standard in Kentucky law.

■ In *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255 (Ky.1985), the Supreme Court of Kentucky held that summary judgment was proper only where the movant could show that the adverse party could not prevail under any circumstances. The Supreme Court has also stated as follows:

... the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor.

*Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Because factual findings are not at issue in this case, there is no requirement that we defer to the conclusions of the trial court. Since we are dealing solely with matters of law, our review is *de novo.* Therefore, we must determine if the Bank was entitled to judgment as a matter of law.

The parties agree that the issues before us are governed by the provisions of Revised Article 9 of the Uniform Commercial Code (the UCC) as adopted by Kentucky and which became effective on July 1, 2001. Kentucky Highlands contends that the decision of the Supreme Court of Kentucky in *GMAC, supra,* a case factually similar to the one before us, remained intact and unaffected precedentially—even after the General Assembly adopted revisions to Kentucky's commercial code in the wake of *GMAC.* Conversely, the Bank argues that the revisions to Article 9 rendered the decision in *GMAC* meaningless with respect to this case.

In *GMAC,* the Supreme Court of Kentucky was asked to decide whether a deposit bank could apply the cash proceeds of a creditor's collateral to cover its depositor's overdrafts. *Id.* Relying on a decision rendered by the Supreme Court of Iowa in 1989, our Court concluded that the secured creditor had priority over the interest of the deposit bank in the account by virtue of its security agreement with the depositor, metaphorically holding that the bank could not bypass or "leapfrog" the secured creditor by reimbursing itself for overdrafts taken from deposits which were derived from identifiable cash proceeds of the secured creditor's collateral. *Id.*

Kentucky Highlands argues that the decision "could hardly be more clear, or more clearly applicable to the case presented ... against the Bank." Brief at 4. Applying the reasoning of *GMAC* to the facts of the case before us, Kentucky Highlands essentially contends that the Bank of Corbin could not reimburse itself for Tritech's overdrafts from an account into which customer payments had been deposited—payments (or collateral) that belonged to (and should have been paid directly to) Kentucky Highlands under its loan agreements with Tritech.

The Bank contends that the drafters of the UCC (and Kentucky legislators adopting and incorporating its provisions in our statutes) clearly intended to reverse the prevailing trend in existing law. That is, their adoption of the revisions to Article 9 was directly aimed at undoing the effects of the Supreme Court's decision in *GMAC.* According to the Bank,

[t]he drafters of Revised Article 9 and the legislature determined that the interests of depository banks, the free flow of commerce and the checking system are superior to the interest of secured creditors in funds deposited into accounts at depository banks.

Appellee's Brief at 1. Consequently, the Bank argues that a new presumption of priority has been conferred upon depository banks and that secured creditors are required to take specific steps to preserve their interest in funds held by a bank.

■ We agree with the Bank's argument. By enacting the revisions, the drafters of Revised Article 9 and the legislature of Kentucky have clearly and deliberately shielded depository banks from claims and priority disputes with secured creditors.

Addressing the priority of conflicting security interests in a deposit account, KRS 355.9–327 provides as follows:

(1) A security interest held by a secured party having control of the deposit account under KRS 355.9–104 has priority over a conflicting security interest held by a secured party that does not have control.

(2) Except as otherwise provided in subsections (3) and (4) of this section, security interests perfected by control under KRS 355.9–314 rank according to priority in time of obtaining control.

(3) Except as otherwise provided in subsection (4) of this subsection, **a security interest held by the bank with which the deposit account is maintained has priority over a conflicting security interest held by another secured party.**

(4) A security interest perfected by control under KRS 355.9–104(1) has priority over a security interest held by the bank with which the deposit account is maintained. (Emphasis added.)

The official commentary to the UCC explains the bank's super-priority status as follows:

Under paragraph (3), the security interest of the bank with which the deposit account is maintained normally takes priority over all other conflicting security interests in the deposit account, **regardless of whether the deposit account constitutes the competing party's original collateral or its proceeds.** A rule of this kind enables banks to extend credit to their depositors without the need to examine either the public record or their own records to determine whether another party might have a security interest in the deposit account.

* * * *

A secured party who claims the deposit account as proceeds of other collateral can reduce the risk of becoming junior by obtaining the debtor's agreement to deposit proceeds into a specific cash-collateral account and obtaining the agreement of that bank to subordinate all its claims to those of the secured party. But if the debtor violates its agreement and deposits funds into a deposit account other than the cash-collateral account, the secured party risks being subordinated.

(Emphasis added). [KRS 355.1–110 permits the use of the official comments in the construction and application of Chapter 355.]

KRS 355.9–340 establishes similar priority rules with respect to the depository bank's right of set-off against funds in a customer account that might be subject to a claim by a secured creditor. KRS 355.9–340 provides as follows:

(1) Except as otherwise provided in subsection (3) of this section, a bank with which a deposit account is maintained may exercise any right of recoupment or set-off against a secured party that holds a security interest in the deposit account.

(2) Except as otherwise provided in subsection (3) of this section, the application of this article to a security interest in a deposit account does not affect a right of recoupment or set-off of the secured party as to a deposit account maintained with the secured party.

(3) The exercise by a bank of a set-off against a deposit account is ineffective against a secured party that holds a security interest in the deposit account which is perfected by control under KRS 355.9–104(c), if the set-off is based on a claim against the debtor.

KRS 355.9–340 places a bank's right of set-off ahead of the security interest of a secured party in the deposit account. Under this provision, a secured party's interest in the account will be subordinate **until and unless** the security interest in the deposit account is perfected "by control under KRS 355.9–104(c)."

Kentucky Highlands contends that the priority rules established by KRS 355.9–340 do not apply where a secured party claims a security interest in the **cash proceeds** deposited into the commercial account rather than a security interest in the deposit account itself. We disagree. That construction would fail to distinguish between a creditor who neglected to protect its interests and a conscientious secured party that took the necessary steps to establish its priority. The revisions to Article 9 recognize that very distinction. The result urged by Kentucky Highlands conflicts with the clear intention of revised Article 9: to provide a comprehensive and predictable framework by which parties may avoid priority disputes and to protect the interests of depository banks.

Under the revised portions of the UCC, depository banks receive an automatic perfected interest in the accounts of their customers. Kentucky Highlands was aware of its debtors' deposit account with the Bank of Corbin and yet acquiesced in its use without taking any action to assert priority as to proceeds to which it claimed entitlement. Kentucky Highlands was on notice that the Bank could assert a claim against the deposit accounts at any time. Although Kentucky Highlands was in a position to protect its priority through a variety of means, it nonetheless risked becoming subordinate by doing nothing. It is true that the Bank might have protected itself by simply refusing to honor its customer's overdrafts. However, the revised statute required Kentucky Highlands as a secured creditor to monitor its debtor's business and to police its own collateral—not to shift such duties onto the Bank. A depository bank no longer bears the burden to ascertain the source of funds deposited into its customers' accounts and to determine whether there is a creditor who may have a lien on those funds before a bank can assert its rights as a secured creditor—namely, its rights to set-off against the account.

We conclude that the provisions of KRS 355.9–340 directly govern this priority dispute. A depository bank may properly exercise its right of set-off against a secured party who seeks to assert an interest in a commercial deposit account—regardless of whether the secured party claims a security interest in the deposit account as original collateral or as its proceeds. The trial court did not err by granting summary judgment to the Bank on this issue.

■ Next, Kentucky Highlands contends that the trial court erred by granting summary judgment to the Bank because it had offered sufficient evidence of collusion between the Bank and Tritech to deprive Kentucky Highlands of the value of its collateral. In support of its argument, Kentucky Highlands relies on the following provisions of KRS 355.9–332:

(1) A transferee of money takes the money free of a security interest unless the transferee acts in collusion with the debtor in violating the rights of the secured party.

(2) A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party.

The Official Comment explains as follows:

[T]his section does not cover the case … in which a bank debits an encumbered account and credits another account it maintains for the debtor.

A transfer of funds from a deposit account, to which subsection (b) applies, normally will be made by check, by funds transfer, or by debiting the debtor's deposit account and crediting another depositor's account. . . .

We are not persuaded that KRS 355.9–332 is applicable to this case. By its terms, the statute is intended to provide broad protection for transferees of funds from a deposit account representing the proceeds of a secured creditor's collateral. More significantly, we are not persuaded that these provisions pertain to priority conflicts between a depository bank and a secured creditor concerning funds in the deposit account. A depository bank is not a transferee as described by the language of the statute.

Finally, we note that the provisions of KRS 355.9–341 set forth the rights and duties of a bank with respect to deposit accounts as follows:

Except as otherwise provided in KRS 355.9–340(3)[where the secured party has become the bank's customer under 9–104(1)(c) ], and unless the bank otherwise agrees in an authenticated record, a bank's rights and duties with respect to a deposit account maintained with the bank are not terminated, suspended, or modified by

(1) The creation, attachment, or perfection of a security interest in the deposit account;

(2) The bank's knowledge of the security interest; or

(3) The bank's receipt of instructions from the secured party.

Again, the Official Comment provides a helpful explanation:

This section is designed to prevent security interests in deposit accounts from impeding the free flow of funds through the payment system. Subject to two exceptions it leaves the bank's rights and duties with respect to the deposit account and the funds on deposit unaffected by the creation or perfection of a security interest or by the bank's knowledge of the security interest. In addition, the section permits the bank to ignore the instruction of the secured party unless it had agreed to honor them or unless other law provides to the contrary. **A secured party who wishes to deprive the debtor of access to funds on deposit or to appropriate those funds for itself needs to obtain the agreement of the bank, utilize the judicial process, or comply with procedures set forth in other law** . . . .

(Emphasis added).

The Bank was statutorily authorized to ignore even direct "instructions" from

Kentucky Highlands with respect to its conduct toward the deposit account. Kentucky Highlands failed to avail itself of direct agreement with the Bank or to become the Bank's customer as provided by statute in order to protect its interests. The Bank was entitled to judgment as a matter of law with respect to this issue, and the trial court did not err by granting the summary judgment.

The judgment of the Whitley Circuit Court is affirmed.

ALL CONCUR.